511 P.2d 273

Anita F. RIDLEY, a widow and Administratrix of the Estate of Donald G. Ridley, Deceased, Plaintiff-Appellant, Cross-Respondent,

v.

Robert G. VanderBOEGH, Defendant-Respondent, Cross-Appellant.

No. 11074.

Supreme Court of Idaho.

June 22, 1973.

L. F. Racine, Jr., Robert C. Huntley, Jr., Pocatello, for appellant.

P. A. McDermott, P. D. McDermott, Pocatello, for respondent.

BAKES, Justice.

This is an action by plaintiff-appellant Anita F. Ridley, widow and administratrix of the estate of Donald G. Ridley, to obtain life insurance proceeds on the life of her deceased husband pursuant to a partnership agreement with defendant-respondent Robert G. VanderBoegh.

In 1966 Donald G. Ridley and respondent Robert G. VanderBoegh formed an oral partnership to develop a trailer court in Pocatello, Idaho. In 1968 the partners executed formal articles of partnership and purchased life insurance policies on the lives of each other. The partnership agreement contained a buy-sell clause for a deceased partner's interest. At the time the first life insurance policies were purchased in 1968, the net value of the partnership was approximately $60,000. At the date of Ridley's death the partnership net value had increased to an appraised value of approximately $120,000. This was amended to include an $8,000.00 personal property item not included in the appraisal, making a total appraised value of $128,000. The partners had purchased several insurance policies on each other's lives and on December 12, 1969, the date of Ridley's death, there was $130,000 of life insurance in force on each partner's life, with each partner being the owner and beneficiary of the policy on the other partner's life. The premiums on the life insurance policies were paid by the owner-beneficiary-partner in the following manner. The premiums which were paid on the policy on the life of Mr. Ridley were first taken from the partnership account and then that amount was charged to Mr. VanderBoegh's drawing account; and likewise in the case of Mr. Ridley's payment of premiums on the insurance policy on the life of Mr. VanderBoegh.

Following Ridley's death, VanderBoegh, in February and March, 1970, received the entire $130,000 insurance proceeds and tendered $50,867.34 to Mrs. Ridley purportedly representing the deceased partner's net equity and interest in the partnership. VanderBoegh subsequently reduced his offer to $44,791.34, deducting a claim for wages by his wife, Elizabeth VanderBoegh, who had been acting as manager of the trailer court pursuant to the partnership agreement. Mrs. Ridley refused both offers and brought this action seeking the entire insurance proceeds in the sum of $130,000.

In determining the intent of the partners in purchasing the life insurance policies, the trial court interpreted paragraph eleven

(11) of the formal articles of partnership, which reads as follows:

"The above mentioned partners have entered into a life insurance program with New England Mutual Life Insurance Co., Pocatello, Idaho. Each partner has a policy with said firm insuring the other partner's life. Said insurance policy, which may be amended from time to time, is hereby incorporated into this partnership agreement by reference. *In the event the partnership is terminated by the death of either partner, the surviving partner shall purchase the deceased partner's interest and equity in the firm at the appraised valuation. The surviving partner shall apply One Hundred (100%) Per Cent of said insurance to the purchase price.* If said insurance is insufficient to purchase the deceased partner's interest and equity, the remainder of the purchase price is to be paid at the rate of Five Thousand ($5,000.00) Dollars per year, minimum, plus One (1%) Per Cent of the unpaid balance until said balance is paid." (Emphasis supplied).

The trial court found that "it was the intent of each of the partners to provide sufficient life insurance coverage on each partner's life in order that upon the death of one partner, the surviving partner would have sufficient funds available to purchase the deceased partner's net interest and equity in the firm at the appraised valuation and have sufficient moneys remaining to apply to the partnership liabilities," and awarded plaintiff $64,000.00 as the value of Ridley's net equity and interest in the partnership and interest from December 12, 1969, the date of Ridley's death.

On December 6, 1971, the parties entered into a stipulation whereby Mrs. Ridley accepted $71,136 from VanderBoegh which represented $64,000 plus interest from the date of Ridley's death, and permitted Mrs. Ridley to convey her interest in the partnership to VanderBoegh without adversely affecting any rights either party may have on appeal. The parties also stipulated that acceptance of the stipulated sum was not an admission by either party that that sum is the amount he or she actually believes is owing.

Both parties have appealed from the trial court's judgment. The plaintiff-appellant, Mrs. Ridley, contends that the partnership agreement was clear and unambiguous requiring that 100% of the insurance proceeds of $130,000 be paid to her in lieu of any claim against the partnership. In the alternative, appellant maintains for the purpose of argument that should this Court find the partnership contract ambiguous and requiring interpretation, that ambiguity should be resolved in favor of deceased's estate. One final theory presented by appellant on appeal is that if it is determined that the entire $130,000 insurance proceeds not be paid to appellant under the partnership agreement, the insurance proceeds be considered an asset of the partnership. Under this theory, appellant claims she is entitled to one half of the net equity and interest which, with the inclusion of the insurance proceeds, would amount to one half of $258,000, or $129,000. Appellant reaches this figure by adding the $130,000 insurance proceeds to the $128,000 net partnership assets, totaling $258,000, one half of which is $129,000.

Appellant assigns the following as error: (1) that the trial court failed to interpret the partnership agreement to require payment of the entire insurance proceeds to appellant; (2) that having found the provisions of the partnership agreement to be ambiguous, the trial court erred in failing to resolve the ambiguity in favor of the heirs of the deceased partner; (3) that the trial court erred in the basic premise of conclusion of law number one in that the court mistakenly thought the insurance then in effect was less than actually was purchased; (4) that the trial court erred in determining that the intent of the parties was to provide insurance for the benefit of the surviving partner in excess of that necessary to pay partnership liabilities; (5) that the trial court erred as a

**460**

matter of law in failing to find that it is illegal to insure beyond the insurable interest of the surviving partner; (6) that the trial court failed to make findings and conclusions regarding Elizabeth VanderBoegh's claim for wages and deny the same; (7) that the trial court failed to set forth a basis for the findings that the net value of the partnership was $120,000 ($128,000 as amended); and (8) that the admission of VanderBoegh's testimony regarding the parties' intent was in violation of the Dead Man's Statute, I.C. 9–202.

Respondent and cross appellant Vander-Boegh appealed from the trial court's judgment contending that it was error to award interest on the judgment from the date of Ridley's death, and that the trial court erred in failing to award Mrs. VanderBoegh a reasonable salary for her efforts as manager of the trailer court.

The trial court recognized that under the circumstances of this case the two underlined sentences from the partnership agreement in question are in conflict. However, in the memorandum decision and order the trial court held that the governing phrase in paragraph eleven is, "The surviving partner shall purchase the deceased partner's interest and equity in the firm at the appraised valuation." In arriving at this interpretation the trial court gave paramount consideration to what it felt was the intention of the parties in drafting the agreement. The court relied heavily upon the testimony of the insurance agent, Hal Neddo of Pocatello, who sold the insurance policies to the partners and who testified to the content of discussions between himself and the partners as they were in the process of purchasing the policies involved in this action. The insurance agent testified that the partners expressed concern that in the event anything should happen to the other partner, the surviving partner would need additional capital to proceed with their plans to complete the trailer park. Neddo further testified that the partners did not want the partnership named as beneficiary, and that it was the

deceased partner, Ridley, who stated that without additional capital he certainly could not proceed if VanderBoegh were to be the first to die.

"THE COURT: If you can do this, Mr. Neddo, why, just give the conversation.

"THE WITNESS: Judge, I will try. We drank many pots of coffee, which leads to sobriety, and as we prepared to leave, it was the expressed comment, to the best of my recollection, that Don was the one that made the expression that without additional capital he certainly could not proceed if Don were to be the first one to die.

"Q. (By Mr. P. D. McDermott) You mean if Bob were to be the first one—

"A. Yes, if Bob were to be the first one." (Tr. p. 110, lines 1–11).

Neddo also testified that both partners were aware of and expressed the fact that there was more insurance on their lives than their net interest in the business. (Tr. p. 109).

Neddo's testimony is supported by the surviving partner's testimony. Vander-Boegh testified that they (the partners) wanted enough insurance so that in the event of one of the partner's death, the survivor would have something with which to pay off the partnership liabilities. In this regard, VanderBoegh testified regarding the purchase of the $100,000 policies:

"THE WITNESS: I told Mr. Neddo to secure the $100,000 policy as fast as he could. Both Don and I were flying and we were concerned with our safety on the highway and in the air, and Don told Mr. Neddo the same thing I told Mr. Neddo, and when this conversation was over in the middle of the afternoon of November 1, 1969, as we were walking out of the cafe Don reiterated to Mr. Neddo to have our physicals lined up and get this insurance as fast as possible because if something happened to me, he would not have the funds and the credit to continue the business." (Tr. p. 161, lines 13–22).

VanderBoegh testified as to his intent in inserting into the partnership agreement the phrase, "In the event the partnership is terminated by the death of either partner, the surviving partner shall purchase the deceased partner's interest and equity in the firm at the appraised value."

"THE WITNESS: My intent, Mr. McDermott, is verbatim on what this sentence is, 'In the event the partnership is terminated by the death of either partner, the surviving partner shall purchase the deceased partner's interest and equity in the firm at the appraised valuation.' Now, I did not have put in there that the interest and equity was the amount of the insurance. The interest and equity is the appraised valuation. I can't construe anything other than what it says. This is what I intended and that's what we instructed be put in it, I instructed to be put in it.

"Q. Now, at any time, Mr. Vander-Boegh, did you consider the life insurance, which was in force and that has been admitted here, as representing a minimum equity?

"A. No, sir.

"Q. What was your intention regarding this life insurance and in connection with the partnership agreement?

"A. The insurance, Mr. McDermott, if either one of us died, we would determine our assets and liabilities and determine each partner's equity. Then we would take this insurance and buy this equity out and there would be enough moneys left over for the partner to pay these outstanding bills, and Don and I had a lot of outstanding bills, and this was our intent in it.

"Q. Now the next says, 'The surviving partner shall apply One Hundred (100%) Per Cent of said insurance to the purchase price.'

.    .    .    .    .    .

"THE WITNESS: I intended in this sentence, Mr. McDermott, that—as I have stated before, our assets and our liabilities constantly changed. If I was to keep enough insurance to balance this thing out where the insurance would exactly equal the equity, I would have to have appraisals week by week. Now, my intent in this sentence was if my deceased partner's equity was more than what our insurance covered, we would apply 100 percent of this insurance to this equity, and, being insufficient, we would pay $5,000 a year at 1 percent. Now, in the event the insurance moneys exceeded the equity, we would buy 100 percent of this equity, and the surviving partner would have the moneys to pay these outstanding bills and keep the business going." (Tr. pp. 167–169).

All of the above testimony of Vander-Boegh was admitted over objection by appellant on grounds that such testimony violated the parol evidence rule and Idaho's Dead Man Statute, I.C. § 9–202.

A careful reading of paragraph eleven of the partnership agreements leads to the conclusion that the fourth and fifth sentences are actually in conflict, as the trial court determined, thus resulting in an ambiguity. Therefore, in such a case, parol evidence is admissible to enable the trial court to make a determination regarding the intent of the partners as to that paragraph. It is well established that, where the writing is ambiguous, parol evidence is admissible to show intent of the parties at the time the contract was made. Big Butte Ranch, Inc. v. Grasmick, 91 Idaho 6, 415 P.2d 48 (1966). Based on the partnership agreement and the parol evidence admitted, the trial court found that the "intent of the partners was to provide sufficient life insurance coverage on each partner's life in order that upon the death of one partner, the surviving partner would have sufficient funds available to purchase the deceased partner's net interest and equity in the firm at the appraised valuation and have sufficient moneys remaining to apply to the partnership liabilities." The finding of the trial court is clearly supported by the evidence produced at trial. It is a rule of long standing in this

Court that findings made by a trial court which are supported by substantial and competent, though conflicting evidence will not be disturbed on appeal. Johnson v. School District, Idaho, 508 P.2d 547 (1973); Ivie v. Peck, 94 Idaho 625, 495 P.2d 1110 (1972); Reardon v. Union Pacific R. R., 93 Idaho 833, 475 P.2d 370 (1970); Smith v. Daniels, 93 Idaho 716, 471 P.2d 571 (1970).

The trial court's finding that the intent of the partners in purchasing the insurance was to be used to purchase the net equity and interest of the deceased partner with the survivor retaining the balance to apply to partnership liabilities is further strengthened by the fact that the premiums were paid by the beneficiary of the policy, not the partnership or the insured partner. Had the parties intended that the entire proceeds be given to the deceased partner's widow in lieu of any claim against the partnership assets, the policies simply could have named the deceased partner's widow beneficiary. This was not done. The partners expressly named the survivor, not the widow or partnership, as beneficiary. Each partner paid the premiums on the policy which he took out on the life of the other, and the partners established an appraisal method for determining the deceased partner's interest and equity in the partnership.

■ Appellant also argues that VanderBoegh's testimony was violative of the Idaho Dead Man's Statute, I.C. § 9–202. This contention is without merit. I.C. § 9–202 reads in part:

"9–202. Who May Not Testify.—The following persons cannot be witnesses:

. . . . . .

"3. Parties or assignors of parties to an action or proceeding . . ., upon a claim or demand against the estate of a deceased person, as to any communication or agreement not in writing, occurring before the death of such deceased person."

■ The present action is not a claim or demand against the estate of the deceased, but is an action by the widow and administratrix of the estate of the deceased against VanderBoegh. I.C. § 9–202 is not a bar to VanderBoegh's testifying concerning the circumstances surrounding the purchase of life insurance where the claim or demand is not made against the estate of the deceased. The Dead Man Statute has no application to one defending a claim brought by the administrator or executor of an estate. Chiara v. Amabile, 64 Idaho 55, 127 P.2d 795 (1942); see also, Bell, Handbook of Evidence for the Idaho Lawyer, 2d ed., p. 28 (1972). See also Sedgwick v. Sedgwick, 52 Cal. 336 (1877) wherein the California Supreme Court, in interpreting a similar deadman's statute stated: "This action is brought by the executrix, and is brought upon a demand, not against, but in favor of the estate, and therefore does not fall within the above cited provision. The Court erred in excluding the testimony of the defendant." 52 Cal. at 337. Sedgwick was cited with approval in Bruce v. Ullery, 58 Cal.2d 702, 25 Cal.Rptr. 841, 375 P.2d 833 (1962), wherein the California Supreme Court stated, ". . . [W]e believe that this court has long recognized that an estate waives the protection of the statute by filing an action for and on its own behalf to obtain relief upon facts occurring before the death of decedent." 25 Cal.Rptr. at 843, 375 P.2d at 385. Neddo's and VanderBoegh's testimony was admissible to show and explain the intent of the partners in placing paragraph eleven in the articles of partnership and their intent in purchasing life insurance on each other's life.

■ In a major portion of her argument appellant contends that where a partnership agreement such as the one in the present case is found to be ambiguous, that ambiguity must be resolved in favor of the deceased partner's estate. There are various rules of construction that aid courts in construing ambiguous agreements. One commonly used rule of construction is that a contract should be construed most strongly against the party preparing or

drawing the agreement. Big Butte Ranch, Inc. v. Grasmick, *supra*; Idaho Falls Bonded Produce & Supply Co. v. Egbert, 79 Idaho 196, 313 P.2d 327 (1957); Morgan v. Firestone Tire & Rubber Co., 68 Idaho 506, 201 P.2d 976 (1948). This rule of construction is not applicable to the present case because both partners were represented by the same attorney who drafted the partnership agreement in question.

Another rule of construction utilized by courts in construing ambiguous agreements is the rule of construction cited by appellant. We are aware of the cases that apply a liberal construction of ambiguous agreements in favor of the deceased partner's estate. As an example, see Rollman v. Rollman, 175 Md. 379, 2 A.2d 15 (1938); Rubel v. Rubel, 221 Miss. 848, 75 So.2d 59 (1954). However, just as the rule that ambiguous contracts are construed more strongly against the party preparing the agreement does not insure an adverse result to the party drafting the agreement, the rule of liberal construction in favor of the deceased partner's estate does not automatically resolve every ambiguity in favor of the deceased's estate. This rule is utilized, along with other rules of construction, merely as a means of determining the intent of the parties to an ambiguous agreement and is not intended to be a controlling rule of law in all cases involving ambiguities and widows.

In the present case the trial court determined from all the evidence presented at trial that it was the intent of the partners to make the policy proceeds payable to the surviving partner in order that he be able to purchase the deceased partner's interest and equity at the appraised price and have some additional money to help pay partnership debts. That finding is supported by substantial and competent evidence and will not be disturbed on appeal. Johnson v. School District, *supra*; Ivie v. Peck, *supra*; Reardon v. Union Pacific R. R., *supra*. Appellant contends that it would be against public policy to allow respondent herein to retain the insurance proceeds over and above that amount required to pay for the deceased partner's interest under the buy-sell provision. We disagree. Partners have an insurable interest in one another, irrespective of the buy-sell provision. Appleman, Insurance Law & Practice, § 871 (1966); Couch on Insurance 2d, § 24:144 (1960); See Annotation 70 A.L.R.2d 577 (1960). The trial court found that the partners were concerned that the amount of capital and credit required to complete and operate the trailer park would have been more than either of them could have singly provided. The loss of a partner, with a concomitant loss in capital, credit and management which the deceased could have contributed, was an exigency for which the excess insurance was both necessary and reasonable.

The next issue presented is to determine the date from which appellant is entitled to interest on the amount owed to her by VanderBoegh. Appellant contends that she is entitled to interest from December 12, 1969, the date of Ridley's death. Respondent contends that Mrs. Ridley is entitled to interest only from the date of judgment.

By statute in Idaho, money due "by express contract" or "after the same becomes due" draws interest at 6% in the absence of an express written contract fixing the interest rate at a different amount. I.C. 28–22–104. The trial court's ruling that interest was due from December 12, 1969, the date of Ridley's death, is incorrect. The death of Ridley created no obligation upon VanderBoegh to purchase the deceased's interest in the partnership. Upon the death of one partner the other has a duty to wind up the partnership affairs, liquidate the assets and to account to the deceased partner's estate. Spencer v. Spencer, 91 Idaho 880, 434 P.2d 98 (1967). The obligation to purchase

Ridley's interest was created by the agreement, and it contemplated payment out of the insurance proceeds after the partnership property was appraised. The first appraisal which fixed the gross value of the partnership assets at $200,000, the amount also fixed by the trial court, was received on approximately December 28, 1969. The insurance proceeds from the two insurance policies were not received by VanderBoegh until at least three months from the date of death of Mr. Ridley. Therefore, it is our view that three months after the date of Mr. Ridley's death, or March 12, 1970, would have been the earliest time that the purchase price "became due" under the agreement. I.C. 28–22–104.

Even though a dispute arose between the parties regarding whether the entire insurance proceeds should be paid to the deceased's estate or merely the appraisal price, the trial court ruled and we have affirmed that it was the appraisal price which controls, and therefore the money was due when the appraisal was completed. However, for "equitable considerations" courts have often refused to allow interest from a time prior to judgment when the principal amount of the liability is unliquidated or not ascertainable by a reasonably certain process, often called a "mathematical process." See Mitchell v. Flandro, 95 Idaho 228, 506 P.2d 455 (1972); Farm Development Corp. v. Hernandez, 93 Idaho 918, 478 P.2d 298 (1970).

After the first appraisal and the insurance proceeds were received, we are of the opinion that the amount owing for the deceased's interest in the partnership, although contested, was ascertainable at least for the purpose of commencing the running of interest on the claim. We do not find such "equitable considerations" present here as to deprive Ridley's estate of the interest on the money due when, as here, VanderBoegh invested the money himself and received interest on it pending the trial. Therefore the matter is remanded to the trial court to correct the computation of interest, which should run from March 12, 1970, until the date of judgment.

The final assignment of error to be considered is the cross appeal of defendant VanderBoegh regarding the trial court's failure to make any provision for the claim for wages by Elizabeth VanderBoegh as manager of the business. The partnership agreement provided that Mrs. VanderBoegh would act in the capacity of manager of the trailer park and expressly stated that she was to "receive a fair and reasonable salary per month in consideration for her endeavors on behalf of the partnership." At trial, defendant VanderBoegh introduced testimony concerning the fair value of such services. Cross appellant VanderBoegh's notice of appeal and assignment of error specifically refer to the failure of the trial court to award Mrs. VanderBoegh a reasonable salary for her efforts as manager of the partnership business. The problem with this assignment is that the wife, Elizabeth VanderBoegh, is not a party to these proceedings. Nothing in the pleadings would justify the making of an award to her as such. The only relevance of her claim is as it relates to the liabilities of the partnership in determining the net equity in the partnership to be divided between the partners. In this regard the trial court made ultimate findings of fact in which the gross appraised value of the partnership was found to be approximately $200,000 and the net appraised value to be in the neighborhood of $120,000, thus apparently concluding that the partnership had net liabilities of approximately $80,000. The trial court further found that there was an additional $8,000 worth of personal property items not included in the appraisals which were partnership property. The inclusion of that personal property raised the net appraised value of the partnership to $128,000, one half of which was awarded to the wife as the deceased partner's interest.

In arriving at the partnership valuation the partnership property was appraised by three independent appraisers. The gross appraisal valuation of the partnership assets ranged from a low appraisal of $191,544 to a high of $220,000. The third appraisal set gross partnership assets at $200,000. The final net valuation figure of $128,000 relied upon by the trial court was within the range of the appraisals and the testimony, and therefore we cannot say as a matter of law that the net value figure arrived at by the trial court was not a correct net appraisal valuation figure. No assignment of error was made by cross appellant concerning that net appraised valuation figure, and no request was made by cross appellant that the trial court make a specific finding concerning the liabilities of the partnership.[1]

The evidence in the record before this Court is sufficient to support the ultimate finding of fact by the trial court that the net appraised valuation of the partnership was $128,000, of which plaintiff was entitled to one half, which the trial court awarded her. Because cross appellant has failed to assign as error the finding of the trial court with regard to the determination of the net appraised valuation, cross appellant's second assignment of error is denied.

The judgment of the trial court is affirmed in all respects except as to the award of interest, and the matter is remanded to the trial court to recompute the interest as herein provided.

Costs to respondent.

DONALDSON, C. J., and SHEPARD, McQUADE and McFADDEN, JJ., concur.

1. It is to be noted in the transcript that Mrs. Elizabeth VanderBoegh testified that her wage claim was not carried upon the books of the partnership as a liability, and she testified that the claim for wages did not arise until the

dispute arose between cross-appellant Robert VanderBoegh and the plaintiff Mrs. Ridley concerning the amount to which Mrs. VanderBoegh was entitled under the partnership agreement. (Rptr. Tr. p. 72).