Portion of the Plat showing road as it goes across Conn and Conachen properties

Scale.........4"............ ............to one mile.

I hereby certify that the above is an accurate plat of said road.

..............A.O.Modlin................ ....:
..............f.L.S, no.141...

613 P.2d 376

Richard J. BERGKAMP and Marilyn Bergkamp, husband and wife, dba Alpine Mexico Cafe, Plaintiffs-Appellants,

v.

Thomas CARRICO, dba the Alpine Saloon; Gruener, Inc., an Idaho Corporation; SNT, Inc., an Idaho Corporation; and Michael A. Martin and Karin T. Martin, husband and wife, Defendants-Respondents.

No. 13058.

Supreme Court of Idaho.

July 1, 1980.

E. Lee Schlender of Schlender & Donovan, Ketchum, for plaintiffs-appellants.

George R. Kneeland of Kneeland, Laggis, Korb, Collier & Benjamin, Ketchum, for defendants-respondents.

BAKES, Justice.

This is an appeal from an order granting summary judgment in favor of defendant respondents. We reverse.

In July of 1974 plaintiff appellants Bergkamps, for brevity referred to herein as lessees, entered into a written lease agreement with Gruener, Inc., hereinafter referred to as lessor, whereby the lessees obtained a leasehold interest in lessor's property, commonly known as the "Alpine Club," a restaurant in Ketchum, Idaho. The lease contained a variety of standard provisions, including an option to renew for an additional five years after the original term of five years expired. A final paragraph in the lease is the heart of this controversy:

"21. *Termination on Sale.* If the premises, or the controlling stock in Gruener, Inc., the owner, shall be sold to anyone other than George Spence, John Thornton and Cliff Noxon or any of them or to a group of which one of them is a member, then this lease may be terminated by notice in writing by the new owner or owners, such termination to take effect twelve (12) months after said notice. Upon such termination the Lessee shall receive the sum of $10,500.00, as reimbursement for his additions and improvements.

"Lessee shall further receive the reasonable value of his inventory based on its value used on the premises; Lessee shall also receive 12½% of gross sales in excess of $60,000.00 for the twelve (12) months prior to the effective termination date. If the parties cannot agree to the inventory value, it shall be determined by arbitration."

Elizabeth Gruener, sole stockholder of Gruener, Inc., did in fact sell Gruener, Inc., in November, 1974, to Spence, Thornton & Noxon, who thereafter changed the name

of the corporation to SNT, Inc. In June, 1976, SNT in turn sold the Alpine Club to the Carricos, defendant respondents. On May 26, 1977, Carricos sent a letter to Bergkamps advising them that they were terminating the lease pursuant to paragraph 21. The Carricos in turn sold to defendant respondents Michael and Karin Martin on November 8, 1977. On November 10, 1977, the Martins sent a letter to the Bergkamps, lessees, again purporting to terminate the lease.

In December, 1977, the Bergkamps filed a complaint in district court seeking: (1) damages for unjust enrichment resulting from Bergkamps' improvements and from breach of the lessors' covenant of quiet enjoyment; and/or (2) a declaratory judgment that the lease could not be terminated.

The parties stipulated to the factual background of the case, and agreed that the court could on cross motions for summary judgment determine the issue of interpretation of the disputed paragraph 21. The parties requested a declaratory judgment which would determine whether the defendants had the right to terminate the lease. Holding paragraph 21 of the lease agreement to be unambiguous, the district court construed it unfavorably against the lessee and entered a decree cancelling the lease.

The intended meaning of paragraph 21 is not apparent on its face. Its provisions are susceptible to differing interpretation. It can just as easily be read to imply a continuing reservation in *any* subsequent owner of the power to terminate the lease as it can be read to imply a limited reservation in certain parties only.

■ Where the terms of a contract are ambiguous, its interpretation and meaning is a question of fact and extrinsic evidence may be considered in attempting to arrive at the true intent of the contracting parties. *Roberts v. Hollandsworth*, 582 F.2d 496 (9th Cir. 1978); *Werry v. Phillips Petroleum Co.*, 97 Idaho 130, 540 P.2d 792 (1975); *Ridley v. VanderBoegh*, 95 Idaho 456, 511 P.2d 273

(1973). Moreover, the court must try to discover that intent and may scrutinize circumstances surrounding the contract's formation. *Transamerica Leasing Corp. v. Van's Realty Co.*, 91 Idaho 510, 427 P.2d 284 (1967).

■ Resolution of this ambiguity issue requires further proceedings in which oral and documentary evidence may be presented on the question of the true intent of the parties at the time of the execution of the contract.

The cause is reversed and remanded to the district court for further proceedings consistent herewith. Costs to appellants. Any award of attorney fees to abide final determination in the district court.

DONALDSON, C. J., and SHEPARD, J., concur.

BISTLINE, Justice, concurring and dissenting.

While I agree that the summary judgment should be reversed, I am unable to join in the Court's opinion holding that there must be a trial for the taking of evidence in order to aid the trial court in construing the lease. In holding the lease free from ambiguity the trial court unfortunately did not favor the parties with any memorandum decision setting forth its own views in construing the lease. Today the Court in holding that the trial court was in error does not favor the trial court and the parties with any explanation of the rationale by which it comes to the conclusion that paragraph 21 of the lease is susceptible of two different interpretations.

I agree with the trial court that the lease is not ambiguous. We are not handed the lease and its paragraph 21 in a vacuum, but with a stipulation of all the pertinent facts which brought about the controversy. Obviously the parties carefully stipulated to those facts in order to avoid the delay and expense of a trial, and generally those facts are stated in the Court's opinion. The lease, given a proper construction in connection with the stipulated facts brings me to

the conclusion that, following Mrs. Gruener's sale to SNT, the lease was not subject to cancellation by subsequent purchasers of the owner-lessor's interest. Lawyers and judges as well, should not view such transactions without some regard for reality—a reality which is born out of experience. Lawyers do not "make" contracts for parties. Rather they ascertain that to which the parties have agreed, perhaps suggesting problems which have not occurred to the parties, and reduce the agreement of the parties to a writing. No attorney in his right mind would draw up a lease agreement for a guaranteed term of five years, with a right to extend for another five years, and insert therein an absolute right of cancellation in whomsoever might acquire the lessor's interest—especially where involved was the lease of a restaurant property, which of itself suggests that on the strength of a ten year term the lessee ordinarily commits himself to considerable expenditures of money and time in improvements. The facts stipulated to in this case clearly lend the inference that the attorney who drafted the lease agreement was advised that Mrs. Gruener wanted to sell the property which included the restaurant and the adjoining bar, that SNT were interested in purchasing and would respect the proposed lease if they did purchase—but also, that if Mrs. Gruener did not close a deal with SNT, she wanted to be able to deal with other prospects who for their own reasons might want the entire property free and clear of the lease.

Although the Martins contend that the wording of the paragraph in question gives any new owner of the premises, other than the three named individuals, the power to terminate the lease, it is well established that in construing a contract a court may not look simply at isolated provisions:

"The primary objective of construction of a contract is to discover the intention of the parties and in order to effectuate that objective the contract must be construed as a whole and considered in its entirety. *West v. Brenner*, 88 Idaho 44, 396 P.2d 115 (1964); *Minidoka County v. Kreiger*, 88 Idaho 395, 399 P.2d 962 (1964)."

*Beal v. Mars Larsen Ranch Corp., Inc.*, 99 Idaho 662, 668, 586 P.2d 1378, 1384 (1978).

If Gruener, Inc., for some reason not readily apparent, had wished to impress against the leasehold a ten-year reservation of the right in any and all subsequent successors-in-interest to the fee ownership to terminate the lease at any time, presumably such a wide-gauged provision would have been carefully spelled out. The fact that the lease as *written* limits the contingency of termination to an obviously then tentative or pending sale to SNT demonstrates that such a broad futuristic right of termination was not intended beyond any sale made by Gruener, Inc. The interpretation suggested by the Martins fails to at all accommodate the way in which the clause was restricted. Moreover, the five year lease contains a paragraph giving the lessee an option to renew for an additional five years. If the lessee's option to renew (or even to continue the initial term) could be defeated by any sale made subsequent to the first sale by Gruener, Inc., the lease, the option to renew, and the resulting security thereby provided to a lessee would be meaningless.

The Martins also point to that part of paragraph 21 dealing with payment for inventory and a determination of liquidated damages for termination of the lease, as evidence that the agreement anticipated termination at any time during the lease, rather than only on the event of Gruener, Inc., making a sale. It is equally plausible, however, that those provisions contemplated the possibility that Spence, Thornton and Noxon might not purchase, and Gruener, Inc. (a close corporation entirely owned by Mrs. Gruener) would not be thwarted in the desire to dispose of the property should a buyer be found who would make the deal only if the lease could be canceled.

Moreover, a careful reading of the lease reveals that the conditional right of termination was limited to a specific time: "If the premises . . . shall be sold . . *then* this lease may be terminated . . ." (Emphasis added.) According to Black's

Law Dictionary (5th ed. 1979) the word "then"

> "as an adverb, means 'at that time,' referring to a time specified, either past or future. It has no power in itself to fix a time. It simply refers to a time already fixed. It may also denote a contingency, and be equivalent to 'in that event.'"

The use of the word "then" clearly indicates that the right to terminate the lease, to the extent that it was granted by paragraph 21, was limited to a fixed period of time, to the happening of a specific event, to-wit, *Gruener's sale* to a new owner (other than SNT) who desired to cancel, *i. e.*, "If I sell the premises, then my purchaser may then, and at his option terminate the lease." Once Gruener sold the premises, to whomever, she had no reason whatever to want the lease emburdened with the provisions of paragraph 21. Bergkamp on the other hand, or any lessees, would have every reason to want that paragraph out, making it difficult indeed to envision any person who would accept a ten year lease which was subject to cancellation any time the ownership of the property changed hands.

In short, a review of the lease agreement as a whole leads to the inescapable conclusion that the parties intended by paragraph 21 a contingency arrangement whereby, as a special covenant between the immediate parties and not as a continuing reservation against the leasehold, Gruener, Inc. reserved the right, if the particular sale to SNT did not materialize, to sell to a buyer who conditioned his purchase on getting the premises free of the lease. Since this contingency—a sale of the premises to Spence, Thornton and Noxon—did take place, paragraph 21 should be read out of the lease. The judgment should be reversed with directions to enter judgment in favor of the lessees—the Bergkamps.

McFADDEN, J., concurs.