761 P.2d 1204

**AFTON ENERGY, INC.,**
**Plaintiff–Respondent,**

v.

**IDAHO POWER COMPANY,**
**Defendant–Appellant.**

No. 17052.

Supreme Court of Idaho.

Sept. 2, 1988.

Evans, Keane, Koontz, Boyd, Simko & Ripley, Boise, for defendant-appellant. Larry D. Ripley, argued.

Orndorff & Peterson, Boise, for plaintiff-respondent. Owen H. Orndorff, argued.

JOHNSON, Justice.

This is a contract case involving the interpretation of a portion of a Power Sales Agreement (the Agreement) between Afton Energy, Inc., (Afton) and Idaho Power Company (Idaho Power). The primary issue presented is whether the purchase price and terms of payment for power set forth in the Agreement are subject to adjustment according to other provisions of the Agreement. The trial court decided that they were not, and we affirm.

I.

THE FACTS

The underlying facts concerning this case are thoroughly stated in two prior decisions of this Court. *Afton Energy, Inc. v. Idaho Power Co.*, 107 Idaho 781, 693 P.2d 427 (1984) (Afton I/III) and *Afton Energy, Inc. v. Idaho Power Co.*, 111 Idaho 925, 729 P.2d 400 (1986) (Afton IV).

The provisions of the Agreement that are at issue here are as follows:

## ARTICLE IV: PURCHASE PRICE AND METHOD OF PAYMENT

(A) *Firm Energy.* Idaho shall pay Seller monthly for Firm Energy delivered and accepted at the Unit Avoided Energy Cost rate specified in Appendix "A".

(B) *Dispatchable Capacity.* Seller shall be paid for Dispatchable Capacity made available to Idaho in accordance with Appendix A. The applicable Capacity Price for purposes of computing Capacity payments is $350 per kilowatt-year, except as may be adjusted as provided in Appendix A or Appendix B. The Capacity Price is derived from Table 1, Appendix A. Idaho's obligation to pay Seller for Capacity furnished to Idaho shall commence as of the Operation Date.

Payment for the Capacity provided in each 12–month period following the Operation Date will be made in twelve (12) equal monthly amounts.

(C) Following the Initial Period, the purchase price specified in (A) and (B) above and the method for determining the Capacity specified in Appendix A, as well as all other rates, terms and conditions set forth in this Agreement, will be subject to the continuing jurisdiction of the Idaho Public Utilities Commission and will be subject to change or revision by order of the Idaho Public Utilities Commission upon a finding, supported by substantial competent evidence, that such change or revision is just, fair, reasonable, sufficient, non-preferential and non-discriminatory. In no event will such a revision result in a purchase price higher than the purchase price that would have been paid without such a change or revision by the Idaho Public Utilities Commission.

(D) If, during the Initial Period, the Idaho Public Utilities Commission determines or approves new purchase prices for power generated by cogeneration or small power production facilities which purchase prices, had they been in effect during the Initial Period, would have resulted in Idaho's paying Seller a lesser amount than Idaho paid Seller based on the rate, terms and conditions set out in this Agreement, Seller agrees to repay Idaho, without interest, the difference between the total dollars paid during the Initial Period under this Agreement and the lesser dollar amount which would have been paid under the revised purchase price schedule adopted by the Idaho Public Utilities Commission during the Initial Period. Any such repayment will be made by reducing the Capacity payments made to the Seller during the ten-year period following the Initial Period. In no event will the amount of such repayment exceed $300,000 per year.

. . . .

## ARTICLE XIII: LEGAL DISPUTE

It is understood and agreed that a bona fide legal dispute exists between Seller and Idaho as to the authority of the Idaho Public Utilities Commission to order Idaho to enter into contracts containing rates, terms and conditions with which Idaho does not concur. Idaho proposed the following language:

> The rates, terms and conditions set forth in this agreement are subject to the continuing jurisdiction of the Idaho Public Utilities Commission. The rates, terms and conditions under this agreement are subject to change and revision by order of the Commission upon a finding, supported by substantial competent evidence, that such rate, term or condition change or revision is just, fair, reasonable, sufficient, non-preferential and non-discriminatory.

The Idaho Public Utilities Commission rejected that language. Seller and Idaho are in agreement that if, as a result of a legal determination as to the Idaho Public Utilities Commission's authority to dictate rules, terms and conditions or to order that contracts be entered into by Idaho, it is determined that the Idaho Public Utilities Commission has such authority, then the purchase price and terms set out in paragraphs (A) and (B) of Article IV will be in effect for the full term of the Agreement. If the legal determination results in a finding that

the Commission does *not* have that authority, paragraphs (C) and (D) of Article IV of the Agreement will be applicable.

Following the decision of this Court in *Afton IV*, Afton filed this action seeking a declaratory judgment against Idaho Power declaring that paragraphs (A) and (B) of Article IV are in effect for the entire thirty-five year term of the Agreement. Idaho Power counterclaimed requesting a declaratory judgment declaring that paragraphs (C) and (D) of Article IV are in full force and effect. Both parties filed motions for summary judgment seeking relief on their respective claims. The trial court ruled that Afton had prevailed in the legal dispute described in Article XIII of the Agreement and that paragraphs (A) and (B) of Article IV of the Agreement were in full force and effect. Idaho Power has appealed from the trial court's decision.

## II.

## THE LEGAL DISPUTE WAS WHETHER IDAHO POWER WAS REQUIRED TO PURCHASE POWER FROM AFTON AT A FIXED RATE FOR THIRTY-FIVE YEARS.

As this Court said in *Afton I/III*, these cases began when the Idaho Public Utilities Commission (the Commission) "ordered Idaho Power to 'agree to purchase from Afton Energy, Inc., cogenerated power in the amount and for the time period tendered by Afton, at the avoided cost rates for Idaho Power Company that have previously been prescribed and approved by this Commission and that are currently in effect.' " 107 Idaho at 783, 693 P.2d at 429.

Article XIII of the Agreement attempts to describe the "bona fide legal dispute" that existed between Afton and Idaho Power at the time Idaho Power appealed this order of the Commission. None of the formulations of this dispute contained in Article XIII accurately and succinctly describe the nature of the dispute. Simply stated, the legal dispute was that Afton wanted to sell Idaho Power cogenerated power for thirty-five years at the avoided cost rates that had previously been established by the Commission and that were in

effect in 1982, and Idaho Power denied its obligation to purchase the power for that period and at those rates.

## III.

## AFTON PREVAILED IN THE LEGAL DISPUTE AND ARTICLE IV(A) AND (B) ARE IN EFFECT.

In *Afton I/III* this Court clearly upheld Afton's position in the legal dispute by affirming the Commission's order that Idaho Power must purchase power from Afton for the period and at the rates Afton sought. Only if this Court had reversed the Commission's order would paragraphs (C) and (D) of Article IV of the Agreement have become applicable pursuant to Article XIII of the Agreement.

In *Afton I/III* this Court also held:

An agreement such as the one entered into between Afton Energy and Idaho Power, while not constituting a tariff, is a special type of contract. The Commission should apply the fair, just and reasonable standard, in a manner not inconsistent with federal law to the extent that it may be applicable, to determine whether the rates need to be adjusted in this particular type of contract. 107 Idaho at 793, 693 P.2d at 429.

This ruling was not intended to indicate that the Commission's order was incorrect or that Afton had not prevailed. The authority given to the Commission by this Court to determine whether the rates need to be adjusted is not the same as the continuing jurisdiction of the Commission provided in paragraph (C) and the repayment provisions of paragraph (D) of Article IV of the Agreement. The following differences are noted:

1. Paragraph (C) would have taken effect only following the initial period of ten years of the Agreement. The authority granted by this Court to the Commission in *Afton I/III* to consider adjustment of rates became effective when the decision was final. As *Afton IV* pointed out:

Idaho Power, or Afton for that matter, may file an application with the Commission requesting that the contract be modified to satisfy the requirements of the *Afton I/III* standard.

111 Idaho at 929–30, 729 P.2d at 404–05.

2. Paragraph (C) would have allowed change or revision of the purchase price specified in paragraphs (A) and (B) of Article IV "as well as other rates, terms and conditions set forth in [the] Agreement." This Court in *Afton I/III* authorized the Commission only "to determine whether the rates need to be adjusted."

3. Paragraph (C) would have provided that the purchase price could never be revised higher than that provided in paragraphs (A) and (B). There is no similar limitation on the authority given to the Commission by this Court in *Afton I/III.*

4. Paragraph (D) would have applied if the Commission were to have determined or approved "new purchase prices for power generated by cogeneration or small power production facilities." The authority granted to the Commission by this Court in *Afton I/III* applies only to adjustments to the rates contained in the Agreement between Afton and Idaho Power, and would not cause the rates in the Agreement to be automatically modified if the Commission established new purchase prices for other cogenerators or small power producers.

5. Paragraph (D) would have required repayment by Afton of overpayments by Idaho Power during the initial period of ten years, if the Commission reduced purchase prices for power generated by cogeneration or small power production facilities below the rates Idaho Power was obligated to pay Afton under paragraphs (A) and (B) of Article IV of the Agreement. Nothing in the decision of this Court in *Afton I/III* would require repayment by Afton if the rates in the Agreement were adjusted by the Commission.

Afton has prevailed in the legal dispute between Afton and Idaho Power that they attempted to describe in Article XIII of the Agreement. Therefore, paragraphs (A) and (B) of Article IV are in effect. The rates contained in paragraphs (A) and (B) may be adjusted by the Commission at any time, if the Commission determines that such an adjustment is "fair, just and reasonable" and "not inconsistent with federal law to the extent that it may be applicable." *Afton I/III,* 107 Idaho at 793, 693 P.2d at 439.

## IV.

## CONCLUSION

The order of the trial court awarding summary judgment to Afton and denying Idaho Power's motion for summary judgment is affirmed.

Costs to Afton.

No attorney fees on appeal.

BISTLINE and HUNTLEY, JJ., concur.

SHEPARD, C.J., dissents without opinion.

BAKES, Justice, concurring specially:

As the Court's opinion correctly points out, this case involves "the interpretation of a portion of a Power Sales Agreement (the Agreement) between Afton Energy, Inc., (Afton) and Idaho Power Company (Idaho Power)." *Ante* at 852, 761 P.2d at 1204. The Power Sales Agreement provides two separate alternative methods of computing the purchase price and method of payment, depending upon the resolution of a certain legal dispute described in Article XIII of the Power Sales Agreement as follows:

"ARTICLE XIII: LEGAL DISPUTE

"It is understood and agreed that a bona fide legal dispute exists between Seller and Idaho [Power] as to the authority of the Idaho Public Utilities Commission to order Idaho to enter into contracts containing rates, terms and conditions with

which Idaho does not concur. Idaho proposed the following language:

> The rates, terms and conditions set forth in this agreement are subject to the continuing jurisdiction of the Idaho Public Utilities Commission. The rates, terms and conditions under this agreement are subject to change and revision by order of the Commission upon a finding, supported by substantial competent evidence, that such rate, term or condition change or revision is just, fair, reasonable, sufficient, non-preferential and nondiscriminatory.

"The Idaho Public Utilities Commission rejected that language. Seller and Idaho [Power] are in agreement that if, as a result of a legal determination as to the Idaho Public Utilities Commission's authority to dictate rules, terms and conditions or to order that contracts be entered into by Idaho, it is determined that the Idaho Public Utilities Commission has such authority, then the purchase price and terms set out in paragraphs (A) and (B) of Article IV will be in effect for the full term of the Agreement. If the legal determination results in a finding that the Commission does *not* have that authority, paragraphs (C) and (D) of Article IV of the Agreement will be applicable."

Afton filed this declaratory judgment action in the district court against Idaho Power shortly after this Court's decision in *Afton IV, Afton Energy Inc. v. Idaho Power Co.,* 111 Idaho 925, 729 P.2d 400 (1986), in which we affirmed the Idaho Public Utilities Commission's decision that it had no jurisdiction over the determination of which of the two alternative payment provisions set out in Article IV was applicable, the jurisdiction being in the district court.

Idaho Power answered Afton's declaratory judgment complaint, and both parties moved for summary judgment based upon the affidavits of officers of their respective companies which set out their version of the legal dispute between the parties and the factual background of the execution of the agreement.

The trial court determined that the evidentiary facts set out in the affidavits were "really undisputed," and "the focus of this dispute hinges on the interpretation of Article XIII to which the parties have given disputed inferences." The trial court then stated that, since neither party had requested a jury trial, under this Court's decision in *Riverside Development Co. v. Ritchie,* 103 Idaho 515, 650 P.2d 657 (1982), it could resolve the disputed inferences on summary judgment because had the matter gone to trial the court would presumably have had the same factual evidence before it and would then have been able to resolve those conflicting factual inferences.

Although not expressly stated, it is clear from the trial court's analysis in its memorandum opinion that it concluded that the payment provisions in Articles IV and XIII of the Agreement were ambiguous. "Determination of whether a document is ambiguous is itself a question of law," *DeLancey v. DeLancey,* 110 Idaho 63, 65, 714 P.2d 32, 34 (1986), but once that initial determination is made, "[i]nterpretation of an ambiguous document presents a question of fact." *Id.* *See also Clearwater Minerals Corp. v. Presnell,* 111 Idaho 945, 949, 729 P.2d 420, 423 (Ct.App.1986) ("Whether a contract is ambiguous is a question of law. (Citing *DeLancey*) An appellate court exercises free review on such a question."). Accordingly, the trial court made two determinations regarding the Agreement, first the legal determination that the contract was ambiguous and, secondly, the factual determination of what the parties had intended by the conflicting inferences contained in the agreement.

The correctness of the trial court's determination regarding ambiguity is crucial because, if correct, it defines and delineates the scope of our review on appeal. If the Power Sales Agreement is ambiguous on the question of which of the two alternative payment methods is applicable, then the trial court's resolution of those factual inferences is controlling, unless clearly erroneous. I.R.C.P. 52(a). *Bergkamp v. Carrico,* 101 Idaho 365, 613 P.2d 376 (1980). On the other hand, if the agree-

ment is not ambiguous, then the interpretation of the contract is a question of law for the trial court in the first instance, but this Court can and must exercise its own independent review and interpretation on appeal. *DeLancey v. DeLancey,* 110 Idaho 63, 714 P.2d 32 (1986); *Galaxy Outdoor Advertising, Inc. v. Idaho Transportation Dept.,* 109 Idaho 692, 710 P.2d 602 (1985); *Luzar v. Western Surety Co.,* 107 Idaho 693, 692 P.2d 337 (1984); *Suchan v. Suchan,* 106 Idaho 654, 682 P.2d 607 (1984); *Bergkamp v. Carrico, supra.*

Three separate sentences or phrases from Article XIII are significant in reviewing the correctness of the trial court's determination. They are as follows:

1. "It is understood and agreed that a bona fide legal dispute exists between Seller and Idaho *as to the authority of the Idaho Public Utilities Commission to order Idaho to enter into contracts containing rates, terms and conditions with which Idaho does not concur.* ...."

2. "Idaho proposed the following language:
   " 'The rates, terms and conditions set forth in this agreement are subject to the continuing jurisdiction of the Idaho Public Utilities Commission. The rates, terms and conditions under this agreement are subject to change and revision by order of the Commission upon a finding, supported by substantial competent evidence, that such rate, term or condition change or revision is just, fair, reasonable, sufficient, nonpreferential and non-discriminatory.'
   "The Idaho Public Utilities Commission rejected that language."

3. "Seller and Idaho [Power] are in agreement that if, as a result of a legal determination as to the Idaho Public Utilities Commission's authority to dictate rules, terms and conditions *or* to order that contracts be entered into by Idaho, it is determined that the Idaho Public Utilities Commission has *such* authority, then the purchase price and terms set out in paragraphs (A) and (B) of Article IV will be in effect for the

full term of the Agreement. If the legal determination results in a finding that the Commission does not have *that* authority, paragraphs (C) and (D) of Article IV of the Agreement will be applicable." (Emphasis added.)

The trial court summarized the arguments of both parties. Idaho Power claimed that the legal dispute "has always been the continuing jurisdiction of the IPUC to review and adjust public utility cogenerator contract rates." The trial court specifically acknowledged this by referring to the proposed language which Idaho Power would have placed in the contract, but which the Idaho Public Utilities Commission expressly rejected, ordering that the language be excluded. That language states,

> "The rates, terms and conditions set forth in this Agreement are subject to the continuing jurisdiction of the Idaho Public Utilities Commission. The rates, terms and conditions under this Agreement are subject to change and revision by order of the Commission upon a finding, supported by substantial competent evidence, that such rate, term or condition change or revision is just, fair, reasonable, sufficient, nonpreferential and non-discriminatory."

Idaho Power argued to the district court that since our decisions in *Afton I/III* held, as the majority opinion herein points out, *ante* at 855, 761 P.2d at 1207, that "[t]he rates contained in paragraphs (A) and (B) may be adjusted by the Commission at any time, if the Commission determines that such an adjustment is 'fair, just and reasonable' and 'not inconsistent with federal law to the extent that it may be applicable.' *Afton I/III,* 107 Idaho at 793, 693 P.2d at 439," that Idaho Power had prevailed.

The district court then summarized Afton's claim as follows:

> "Afton believes that the critical language in article XIII is that which states: 'as a result of a legal determination as to the Idaho Public Utility Commission's authority to dictate rules, terms and conditions *or* to order that contracts be en-

tered into by Idaho....' (emphasis on the disjunctive 'or' added)."

Afton argued that *Afton I/III* had upheld the authority of the commission "to order that contracts be entered into by Idaho ...," and therefore it had prevailed.

The apparent ambiguity in the agreement arises from the use of the terms "such authority" and "that authority" in the following portion of Article XIII:

"[I]f ... it is determined that the Idaho Public Utilities Commission has *such* authority, then the purchase price and terms set out in paragraphs (A) and (B) of Article IV will be in effect for the full term of the Agreement. If the legal determination results in a finding that the Commission does *not* have *that* authority, paragraphs (C) and (D) of Article IV of the Agreement will be applicable."
(Emphasis on "such" and "that" added.)

Do the terms "such authority" and "that authority" mean, as Idaho Power argues, authority in the Idaho Public Utilities Commission to order Idaho Power to enter into contracts which are not subject to the continuing jurisdiction of the IPUC to change or revise those rates based upon the fair, just and equitable standard, or, by way of distinction, do the terms "such authority" and "that authority" merely refer to the authority of the IPUC to order Idaho Power to enter into contracts, whether or not the rates set in those contracts are subject to the continuing jurisdiction of the commission to revise, based upon the fair, just and reasonable standard?

The trial court resolved the ambiguity and conflicting inferences in favor of Afton's interpretation by noting that Idaho Power had actually taken two stances or positions in its defense of Afton's attempts to compel Idaho Power to enter into a contract. The district court noted that, both before the IPUC and before this Court, Idaho Power had denied the IPUC's authority to compel Idaho Power to enter into any power purchase agreement which Idaho Power had not freely negotiated. The district court quoted and emphasized the following language from Chief Justice Donaldson's opinion in *Afton IV:* "Idaho

Power, by answer, denied that the Commission had jurisdiction to order it to enter into the contract attached to Afton's complaint because it was not freely negotiated.... Idaho Power still disputed the legal authority of the Commission to make such an order." 111 Idaho at 927, 729 P.2d at 402. The district court also quoted the following from the *Afton IV* opinion: "Another clause, art. XIII, was entitled *Legal Disputes.* It provided that, if as a result of a legal determination, the Commission has authority to; (1) dictate rules, terms and conditions, *or (2) order Idaho Power to enter into contracts, then the first payment option is in effect." Id.* (Emphasis supplied by district court.)

After reviewing this Court's prior opinions, and the summary judgment record before it, the district court resolved the conflicting inferences in favor of Afton, concluding that the issue to be resolved in the legal dispute was not whether the commission had authority to order Idaho Power to enter into contracts at avoided cost rates which were not subject to the commission's continuing jurisdiction to modify under the fair, just and reasonable standard, but, rather, the issue was merely whether the IPUC had authority to order Idaho Power to enter into any cogeneration contracts, whether modifiable or not. The district court concluded that "Afton has prevailed in the dispute and thus is entitled to have the rates reflected in paragraphs (A) and (B) of Article IV of the contract adopted."

Exercising free review on the preliminary question of law, *DeLancey v. DeLancey, supra,* I agree with the district court that the payment provisions of the Power Sales Agreement can reasonably be interpreted in more than one way. Accordingly, the agreement is ambiguous and the interpretation of the payment provision was a question of fact for the trial court. *Id.* Under this Court's "clearly erroneous" deferential review of trial court findings under I.R.C.P. 52(a), the district court's interpretation of the contract is not unreasonable, based on the summary judgment record before the Court, and the various conflicting inferences which can be drawn from Article XIII. While we, as appellate

judges, might have individually concluded otherwise had we been the trial judge in this matter, that does not diminish our obligation to defer to the trial court's finding unless that finding is "clearly erroneous." I.R.C.P. 52(a).

Idaho Power makes an appealing argument that, as a matter of law, it prevailed because, as the majority opinion acknowledges, *ante* at 855, 761 P.2d at 1207, "[t]he rates contained in paragraphs (A) and (B) may be adjusted by the Commission at any time, if the Commission determines that such an adjustment is 'fair, just and reasonable' and 'not inconsistent with federal law to the extent that it may be applicable.' " [1] However, having concluded that Article XIII of the agreement is ambiguous on the payment issue, we are not here interpreting the agreement as a matter of law, but reviewing a trial court's finding of fact regarding the intention of the parties and the meaning of the agreement. *Berg-*

*kamp v. Carrico,* 101 Idaho 365, 613 P.2d 376 (1980). On this record the trial court's determination is not "clearly erroneous" and accordingly the trial court's decision should be affirmed.

HUNTLEY, Justice, concurring specially.

I write solely to correct what may be some revisionist rewriting of the meaning and history of our past decisions by Justice Bakes in his concurring opinion on two points.

### I.

Justice Bakes leaves an incorrect impression by the material he omits from his first quote in footnote 1:

> However, as our opinions in *Afton III* and *IV* pointed out, and as the majority opinion today acknowledges, under the law of the State of Idaho, "the rates

---

1. Throughout these proceedings, Afton has argued that under the Federal Energy Regulatory Act, and the regulations of the Federal Energy Regulatory Commission, federal law requires that public utilities enter into cogeneration contracts with cogenerators for both long terms and for fixed rates, which rates cannot be modified during the course of the term of the agreement. However, as our opinions in *Afton III* and *IV* pointed out, and as the majority opinion today acknowledges, under the law of the State of Idaho, "the rates contained [in such contracts] may be adjusted by the Commission at any time, if the Commission determines that such an adjustment is 'fair, just and reasonable'...." *Ante* at 855, 761 P.2d at 1207. However, both our decisions in *Afton III* and *IV,* and our decision today, recognize that in the event the authority granted to the IPUC under Idaho law to adjust the rates of cogeneration contracts is "inconsistent with federal law," *i.e.,* is prohibited and thus preempted by federal law, then, of course, federal law would be controlling. Preemption of state law by federal law, while not common, is a matter which this Court has addressed before. *See Rawson v. United Steelworkers of America,* 111 Idaho 630, 726 P.2d 742 (1986) (judgment vacated by mandate of the United States Supreme Court entered July 7, 1987, —— U.S. ——, 107 S.Ct. 2475, 96 L.Ed.2d 368 (1987)); *Dunbar v. United Steelworkers of America,* 100 Idaho 523, 602 P.2d 21 (1979); *Idaho Power Co. v. Idaho Public Util. Comm'n,* 102 Idaho 744, 639 P.2d 442 (1981); *State ex rel. Andrus v. Click,* 97 Idaho 791, 554 P.2d 969 (1976). On at least one occasion this Court has concluded that state law was preempted by federal law. *Downing v. Travelers Ins. Co.,* 107

Idaho 511, 691 P.2d 375 (1984). *See also United States v. Antelope,* 430 U.S. 641, 97 S.Ct. 1395, 51 L.Ed.2d 701 (1977); *Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985); *IBEW, AFL–CIO v. Hechler,* 481 U.S. 851, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987).

While any determination of whether state law is preempted by federal law under the supremacy clause "start[s] with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress," *Ray v. Atlantic Richfield Co.,* 435 U.S. 151, 157, 98 S.Ct. 988, 994, 55 L.Ed.2d 179 (1978), nevertheless this Court in *Afton III* and *IV* recognized the potential for preemption resulting from the Federal Energy Regulatory Act, and the regulations promulgated thereunder. We stated that modification of cogeneration contracts was permissible under state law based on the fair, just and reasonable standard, unless such modification would be "inconsistent with federal law to the extent that it may be applicable." 107 Idaho at 793, 693 P.2d at 439. The potential for federal preemption in these cogeneration contracts would exist regardless of whether that caveat had been inserted in our *Afton III* and *IV* opinions.

Preemption of state law by federal law under the supremacy clause of the United States Constitution is a question of federal law. While state courts are often initially required to pass on the question, the ultimate decision rests with the federal courts. *Rawson v. United Steelworkers of America, supra; IBEW AFL–CIO v. Hechler, supra.*

contained [in such contracts] may be adjusted by the Commission at any time, if the Commission determines that such an adjustment is "fair, just and reasonable"....

The precise quote from *Afton I/III* is:

The Commission should apply the fair, just and reasonable standard, *in a manner not inconsistent with federal law* to the extent that it may be applicable, to determine whether the rates need to be adjusted in this particular type of contract.

107 Idaho at 793, 693 P.2d at 439.

The words "not inconsistent with federal law" are the key to the standard. Although footnote 1 mentions those words in the next sentence, it does so in a way which seeks to minimize their significance by suggesting it is an open question as to whether there is federal preemption which brings those words into play.

In the next paragraph he mischaracterizes *Afton III* and *IV* when he states they "... recognized the *potential* for preemption resulting from the Federal Energy Regulatory Act and the regulations promulgated thereunder." (Emphasis supplied).

On the contrary, whether there is federal preemption was one of the most hotly contested issues, both by the parties and the members of this Court, and we firmly ruled that PURPA and the regulations under it preempt and control.

The Commission in refusing to adopt Idaho Power's proffered language was merely carrying out the directives *imposed by* PURPA and the implementing FERC regulations. (Emphasis supplied).

107 Idaho at 788, 693 P.2d at 434.

Our opinion then proceeds to Section "II Tenth Amendment" where we specifically address and reject Idaho Power's contention that PURPA preemption would violate the Tenth Amendment by usurping powers reserved to the states.

II.

There is a reason why the matters I discuss are of some significance in the scheme of things. The opening sentence of Afton I/III defined the issue as follows:

The basic issue presented today is whether the Idaho Public Utilities Commission (Commission) has authority to order an electric utility to purchase power from a cogenerator or small power producer (CSPP) for a fixed term according to avoided cost rates previously approved by the Commission.

107 Idaho at 782, 693 P.2d at 428.

The reason PURPA requires fixed term/fixed rate contracts is to promote cogeneration by making financing possible. When a utility finances plants by issuing 20–year bonds, those bonds carry a fixed interest rate for their term, which interest rate is not subject to change through the rate-making process from year to year.

The same type of stability is needed by cogenerators and their financing institutions. Thus, the standard we have adopted in Afton I/III creates that stability by not permitting the PUC to change the rate unless the utility is experiencing that extreme level of distress arising to the level of the "public interest review standard" for contract rates. Such is the concept "not inconsistent with federal law" as countenanced by the Public Utilities Regulatory Act—that concept being that the fixed term/fixed rate cogenerator's contract is subject to price revision only under the most unusual and extreme circumstances.