691 P.2d 375

Marilyn A. DOWNING, Individually and as personal representative of the estate of Michael Anthony Downing, deceased, Plaintiff-appellant,

v.

The TRAVELERS INSURANCE COMPANY, a corporation, Defendant-respondent,

and

Burlington Northern, Inc., a corporation; Camas Prairie Railroad Company, a corporation; and JOHN DOE, a corporation, Defendants.

No. 14645.

Supreme Court of Idaho.

Nov. 7, 1984.

Rehearing Denied Dec. 13, 1984.

William V. McCann, Jr., Lewiston, and John C. Hoyt, Great Falls, Mont., for plaintiff-appellant.

Robert P. Brown, Lewiston, and Michael C. Geraghty, Spokane, Wash., for defendant-respondent.

BAKES, Justice.

Plaintiff has appealed the district court's grant of summary judgment to the defendant, the Travelers Insurance Company. The issues presented are: (1) whether plaintiff is a third party beneficiary of an insurance policy between plaintiff's deceased husband's employer and defendant, and (2) whether the district court had jurisdiction to hear the case as opposed to the exclusive jurisdiction given to the Railway Adjustment Board by the Federal Railway Labor Act.

Plaintiff's husband, Michael A. Downing, was a train engineer employed by Camas Prairie Railroad, a subsidiary of Burlington Northern. He was previously employed by Burlington Northern before being transferred to Lewiston. Downing would drive the train from Orofino to Lewiston and back to

Orofino, where he would leave it and then "deadhead" back to Lewiston in his own vehicle. "Deadhead" is a trade term describing a railroad employee's travel, by "off-track" vehicles, to and from the starting point of the train. Under a collective bargaining agreement Downing was paid twelve cents per mile and one hour's time for deadheading in "authorized vehicles" back to Lewiston. On the day in question, after the train "tied up" at Orofino at 4:55 p.m. on July 1, 1977, Downing left Orofino for Lewiston, riding a motorcycle which he had left in Orofino prior to his shift on the train. About ten miles out of Lewiston the motorcycle ran out of gas. Downing hitchhiked the rest of the way into Lewiston where he called his wife to come and get him and take gas out to the motorcycle. Apparently, Downing was at a bar or tavern near the service station from which he had called his wife. It is alleged that he had been drinking during this time. Downing admitted to his wife that he drank "two beers" while waiting at the tavern. She drove him with some gasoline back to where he had left his motorcycle and then followed him as he rode it back into Lewiston. As they were crossing the Memorial Bridge, Downing evidently got too close to (or struck) the divider, which caused him to lose control and be thrown into the oncoming traffic lane, where he was hit by another car and killed. The accident occurred four and one-half hours after Downing had left work at Orofino. The drive from Orofino to Lewiston is a distance of 45 miles.

The union to which Downing belonged (United Transportation Union) had entered into a collective bargaining agreement with many of the nation's railroads, including Burlington Northern and Camas Prairie. The collective bargaining agreement contained a provision for accidental death benefits for employees who were killed while riding in authorized "off-track" vehicles while traveling to and from work. A payment of $90,000 ($100,000 minus $10,000 offset for automatic life insurance benefit already paid) was authorized under the collective bargaining agreement where the employee was within the covered conditions and was not within any of the named exclusions.

Appellant made a claim to Burlington Northern under Article IV of the "off-track" agreement. Burlington denied the claim, stating that it did not come under the agreement's conditions because he was traveling on a motorcycle, and his authorized off-track vehicle was an automobile; and second, he had already completed his travel to Lewiston and was returning to pick up his motorcycle. Finally, Burlington denied the claim because Downing may have come within the exclusion for driving while under the influence of alcohol. Burlington informed Mrs. Downing and her attorney that their remedy, if they wished to contest the denial, was under the Railway Labor Act since their claim involved construction of a collective bargaining agreement dealing with working conditions.

Appellant, through her attorney, chose instead to make a demand for payment directly against Travelers Insurance Company rather than prosecuting a claim with the Railroad Adjustment Board. Demand was made on Travelers because it had a policy with the Camas Prairie Railroad insuring Camas Prairie for any payouts it was obligated to make under Article IV of the collective bargaining agreement. When Travelers would not honor the demand appellant brought this action, naming as defendants Travelers, Burlington and Camas Prairie, and alleging entitlement to the benefits under the policy between Travelers and Camas Prairie (Count I) and also alleging a conspiracy on the part of all three defendants to defeat her claim under the policy (Count II).

One month after the complaint was filed, defendants Burlington Northern and Camas Prairie removed the case to federal district court. All three defendants then moved for summary judgment, and plaintiff Downing moved for an order remanding the case to the state district court on the grounds that there was no jurisdiction in the federal district court. Without giving specific reasons, the United States Dis-

trict Court vacated the removal order and remanded the case to the state district court where it was originally filed to determine whether or not the issue was a "minor dispute" under the Railway Labor Act.

After remand to the state district court, the defendants moved for summary judgment.[1] The district court granted summary judgment on the conspiracy claim (Count II), after the plaintiff acknowledged that she had no evidence of a conspiracy. Summary judgment was then granted to Travelers Insurance Company on Count I. Plaintiff Downing has appealed only the summary judgment in favor of Travelers on Count I.

## I

Appellant's right to death benefits stems from the collective bargaining agreement between the union and the railroad-employer, which provides:

> "Where employees sustain personal injuries or death under the conditions set forth in paragraph (a) below, the carrier will provide and pay such employees, or their personal representative, the applicable amounts set forth in paragraph (b) below, subject to the provisions of other paragraphs in this Article.
>
> "(a) *Covered conditions:*
>
> "This Article is intended to cover accidents involving employees covered by this Agreement while such employees are riding in, boarding, or alighting from offtrack vehicles authorized by the carrier and are
>
> "(1) deadheading under orders ...."

The collective bargaining agreement specifically requires *the employer* to pay the benefits if certain conditions are met. Nothing in the agreement requires the employer to provide the death benefit through an insurance policy; the death benefit was strictly a potential liability of the employer. After this collective bargaining agreement was entered into, the employer, Camas Prairie, opted to insure against this potential liability under the collective bargaining agreement with a policy purchased from respondent Travelers. The policy in question was a group policy, but it was not the ordinary type of group policy in which the employees form the group. Rather, the group referred to in the policy was a group of employer-railroads who had entered into similar collective bargaining agreements. The group policy was to provide coverage for the liability imposed upon them by the various collective bargaining agreements with the union. The policy covers the employer's liability under the collective bargaining agreement for bodily injury, including death, caused by an accident which is sustained by an employee of one of the participating employers while the employee is traveling in an off-track land conveyance or while deadheading under orders. All benefits are payable to the participating employer upon receipt of proof from the employer of the occurrence for which the claim is made. The policy makes no provision for payment to any employee. On the contrary, the policy specifically provides that "[a]ll benefits provided in this Article V *shall be paid to the participating Employer.*" (Emphasis added.) It also provides that benefits are to be paid to the employer "upon receipt of written proof on the Insurer's forms," and that the employer "shall provide such reasonable information as may be necessary to the investigation and settlement of claims." The group policy does not allow for a claim to be presented by the employee or paid directly to such employee.[2] As noted in the affidavit of E.J. Kinder, an employee of Travelers:

---

1. Camas Prairie and Burlington Northern, defendants below, moved for summary judgment, claiming that the state court "lacks subject matter jurisdiction because plaintiff has failed to exhaust her mandated remedies as prescribed by Congress under the Railway Labor Act." That summary judgment was granted by the trial court.

2. This is in contrast to a different Group Policy, # GA–23000, also entered into between the employer and Travelers, which provided for accidental death benefits and life insurance to the employee's survivors. Payment of $4,000 accidental death benefit and a $6,000 life insurance benefit were made directly to the widow of Michael Downing under # GA–23000.

This policy was entered into directly with the railroads, as participating employers. All of the benefit payments made under the policy are made directly to the employers, *not* to any injured employee, or his heirs or personal representative. The policy is, in fact, a reimbursement of the respective participating employers' liability under their collective bargaining agreements with the various railway labor unions, dated September 14, 1968, together with any subsequent modifications or amendments. Any potential claim for benefits by an employee, or his heirs or personal representative, is made directly to the railroad, not to the Travelers Insurance Company, and is, in fact, investigated by the railroad and the railroad determines whether there is liability under the collective bargaining agreement. Any participating railroad employer submits a claim under policy GA822432 only after it itself has made payment, or is about to make payment. Upon proof of claim submitted by any participating railroad employer, the Travelers then reviews the proof of claim and then makes payment direct to the railroad upon approval of the claim. To affiant's knowledge with respect to all claims he is familiar with, that have been made under policy GA822432, there has never been a direct payment to any employee, or his heirs or personal representative. All payments have been made only to the participating railroad employer because that is the manner in which this reimbursement policy is set up."

There is nothing in the policy in question to indicate that the deceased employee or his heirs were intended as beneficiaries of the policy. Their rights, if any, are determined by the provisions of the collective bargaining agreement. Had it not been for the fortuitous circumstance that the employee Downing had transferred from Burlington Northern, his original employer, to its subsidiary, the Camas Prairie Railroad, there would have been no insurance involved, since apparently Burlington Northern had not joined the group policy, opting rather to self-insure its obligations under the collective bargaining agreement. The policy in question was clearly intended to be an indemnification policy, or liability policy. It was intended to insure the Camas Prairie Railroad's obligations under the collective bargaining agreement.

In this action appellant attempts to directly sue Travelers to recover benefits under the insurance policy negotiated between Travelers and the employer. This is a direct action against an insurer, by a party not a party to the insurance contract. The situation here is similar to a case where A injures B, B has a liability insurance policy with C, and A attempts to sue C directly to recover benefits under the policy. This type of direct action has never been recognized. *Pocatello Industrial Park Co. v. Steel West, Inc.*, 101 Idaho 783, 621 P.2d 399 (1980). *See Severson v. Estate of Severson*, 627 P.2d 649 (Alaska 1981); *Mel H. Binning, Inc. v. Safeco Ins. Co.*, 74 Cal.App.3d 615, 141 Cal.Rptr. 547 (1977); *Rapacz v. Township High School Dist.*, 2 Ill.App.3d 1095, 278 N.E.2d 540 (1971); *Miller v. Market Men's Mutual Ins. Co.*, 262 Minn. 509, 115 N.W.2d 266 (1962); *Manukas v. American Ins. Co.*, 98 N.J.Super. 522, 237 A.2d 898 (1968). *See also* Prosser, The Law of Torts, § 82, p. 544 (4th ed. 1971) ("Since, in its inception, liability insurance was intended solely for the benefit and protection of the insured, which is to say the tortfeasor, it followed that the injured plaintiff, who was not a party to the contract, had at common law no direct remedy against the insurance company."). Here, by attempting to maintain the action against the insurance company, without first establishing entitlement to any death benefits under the collective bargaining agreement, appellant is attempting to circumvent the requirement that she establish a right under the death benefit provision of the collective bargaining agreement. Appellant's claim is based upon the death benefit provision of the collective bargaining agreement. Appellant should not be allowed to sue the insurance company directly any more than a tort victim injured in an automobile accident

should be able to directly sue the insurance carrier of the tortfeasor without having first proved a claim against the tortfeasor individually.

The reason why this direct action against the respondent's insurance carrier should not be permitted is patently clear. Appellant's claim is that the deceased employee was "riding in ... [an] off-track vehicle[s] authorized by the carrier and [was] (1) deadheading under orders ...." The employer denied that claim, citing several defenses including the defense that the employee had arrived at his destination and was no longer "deadheading under orders." If this action is reversed for a trial solely against the insurance carrier, which is now the only party remaining in the action since the appellant has not appealed from the dismissal of the employers, Burlington Northern and Camas Prairie Railroad, the employers, against whom any claim under the collective bargaining agreement should be asserted, will not even be parties to the action. The insurance carrier, Travelers, will be attempting to assert a defense based on a collective bargaining agreement to which it is not a party and may have little knowledge or expertise. If only the insurance carrier is a party on remand, the wrong party and the wrong issues will be before the court. The plaintiff cannot point to any language in the policy to indicate that an employee or his heirs have any rights under the policy. The policy expressly provides otherwise. All payments are expressly made payable to the employer. Accordingly, there is no third party beneficiary claim available to plaintiff under our cases.

## II

Both the federal and state district courts noted the fact that if this claim constituted a "minor dispute" under the Railway Labor Act, 45 U.S.C. § 153, then exclusive jurisdiction of the claim would be in the Railroad Adjustment Board. Plaintiff argues that, since the United States District Court remanded this case back to the state court, the United States District Court impliedly

ruled that this case does not involve a federal question, i.e., a "minor dispute" under the Railway Labor Act. We find no such ruling in the record from the United States District Court, but rather the record implies a contrary understanding. After hearing the matter, U.S. District Judge Ray McNichols stated:

"THE COURT: I must say that sometimes oral argument is not valuable and sometimes it is very valuable. At one time I am frank to say that I believed that this was a federal question. But I am persuaded now that this is not the situation. This Court does not have original jurisdiction. I assume that there is not the needed diversity.

"I therefore feel that I have no alternative but to remand the case to the State Court. You may prepare an order and send it around to counsel, and then I will enter it. Thank you, gentlemen."

It appears from comments earlier in the proceedings that Judge McNichols based his ruling on this belief that the federal district court would not have jurisdiction even if there was a federal question involved:

"MR. DUNN (Counsel for plaintiff Downing): ... I think, in summary, Your Honor, on the remand, I would say that either way the court holds that it did not have original jurisdiction.

"THE COURT: In other words what you are saying is that the State Court should decide whether this is a minor dispute and that it would go back to the Board for determination under a labor dispute.

"MR. DUNN: That's what I am saying, Your Honor. The State Court is the proper Court to determine that question.

"THE COURT: Well, the State Court would have to decide if this is a minor dispute."

Thus, the federal district court seemed to have been convinced that if the matter at issue was a "minor dispute" under the Railway Labor Act, 45 U.S.C. § 153, then the Railroad Adjustment Board would have exclusive jurisdiction, not the federal or state district courts, and if it was not a "minor

dispute," there still would be no jurisdiction in the federal district court because there was no diversity, and only the state courts would have jurisdiction.

The seminal case on whether or not an issue presents a "minor dispute" is *Andrews v. Louisville & Nashville RR. Co.*, 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972). In that case a railroad employee had been injured, and when he became well enough to work again the railroad refused to rehire him. He filed an action in the state court for "wrongful discharge." The United States Supreme Court held that petitioner's rights, if any, arose as a result of the collective bargaining agreement, and the Supreme Court held that such a claim under a collective bargaining agreement was a "minor dispute" and the exclusive jurisdiction of the claim under § 301 of the Labor Management Relations Act was the Railway Adjustment Board. The court stated:

"But the very concept of 'wrongful discharge' implies some sort of statutory or contractual standard that modifies the traditional common-law rule that a contract of employment is terminable by either party at will. Here it is conceded by all that the only source of petitioner's right not to be discharged, and therefore to treat an alleged discharge as a 'wrongful' one that entitles him to damages, is the collective-bargaining agreement between the employer and the union. Respondent in this case vigorously disputes any intent on its part to discharge petitioner, and the pleadings indicate that the disagreement turns on the extent of respondent's obligation to restore petitioner to his regular duties following injury in an automobile accident. *The existence and extent of such an obligation in a case such as this will depend on the interpretation of the collective-bargaining agreement. Thus petitioner's claim, and respondents' disallowance of it, stem from differing interpretations of the collective-bargaining agree-*

*ment.* The fact that petitioner intends to hereafter seek employment elsewhere does not make his present claim against his employer any the less a dispute as to the interpretation of a collective-bargaining agreement. *His claim is therefore subject to the Act's requirement that it be submitted to the Board for adjustment.*" 406 U.S. at 324, 92 S.Ct. at 1565. (Emphasis supplied.)

A more recent case in point is the decision of the United States Court of Appeals for the Ninth Circuit in *Magnuson v. Burlington Northern, Inc.*, 576 F.2d 1367 (9th Cir.1978), *cert. den.* 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978). In that case an employee of Burlington Northern, who was represented by the same counsel, Mr. John C. Hoyt, who is representing the claimant Downing in this case, was employed by Burlington Northern as a train dispatcher at a time when a head-on collision occurred between two freight trains. As a result of an investigation and a hearing, the railroad determined that Magnuson was responsible for the accident and discharged him. He brought an action in the state courts in Montana, not for wrongful discharge, but a tort action alleging conspiracy by the railroad to cover up its own negligence which caused the accident, and intentional infliction of emotional distress, for all of which he sought damages.[3] The claimant Magnuson argued that since he was not suing for wrongful discharge under the collective bargaining agreement, but was suing in tort, the *Andrews* case was not applicable, and that the exclusive jurisdiction of the dispute was not in the Railroad Adjustment Board. However, the Ninth Circuit held:

"Artful pleading cannot conceal the reality that the gravamen of the complaint is wrongful discharge. If the pleading of emotional injury permitted aggrieved employees to avoid the impact of R.L.A., the congressional purpose of providing a comprehensive federal scheme for the settlement of employer-employee dis-

**3.** The parallel between that action and this action is striking in view of the claim of conspiracy which the appellant Downing asserted in

this case. No appeal has been taken from the trial court's dismissal of the conspiracy claim.

putes in the railroad industry, without resort to the courts, would be thwarted." 576 F.2d at 1369.

The court went on to hold that the employee's rights, if any, arose from the collective bargaining agreement, and as such was a "minor dispute" within the meaning of 45 U.S.C. § 153, and therefore affirmed the dismissal of the action.

■ In this case the employee's rights, if any, arise from the collective bargaining agreement. As in the *Magnuson* case, the claimant should not, by "artful pleading," be able to conceal this railroad labor dispute as a third party beneficiary insurance issue, choosing only to appeal the dismissal from the trial court's summary judgment in favor of the defendant Travelers Insurance Company. The fact that the Camas Prairie Railroad, as distinguished from Burlington Northern, chose to insure its obligation under the collective bargaining agreement cannot change the fact that there is nothing in this record to suggest this insurance policy was a third party beneficiary contract, and the exclusive jurisdiction of this claim lies with the Railroad Adjustment Board.

### III

Viewing the alleged facts and the existing record most favorably to the plaintiff, we nevertheless conclude that defendant is entitled to summary judgment on the following bases: (1) the plaintiff is not a third party beneficiary to the indemnity or liability policy between defendant Travelers and Camas Prairie; and (2) plaintiff's alleged entitlement to the death benefits involves a "minor dispute" arising out of the interpretation of a collective bargaining agreement between the union and the railroad employer subject to the exclusive jurisdiction of the Railway Adjustment Board.

The judgment of the district court is affirmed. Costs to respondent.

DONALDSON, C.J., and SHEPARD, J., concur.

HUNTLEY, Justice, dissenting.

The logic of the majority opinion may be summarized by the following syllogism:

First, Union representatives bargained with the employer for health and accident insurance *for employees.*

Second, employer procures a contract of insurance for that coverage.

Third, on summary judgment, and as a matter of law, the benefits payable under insurance coverage contract is *not* for the benefit of the *employees.*

Socrates would have difficulty with modern judicial reasoning.

Were I able to command a majority, the decision would read as does the Appendix set forth *infra.*

The majority actually misapprehends the record in two respects:

First, in Part II the reader is left with the suggestion that the federal court implied that this was a minor dispute which would ultimately deprive it of jurisdiction even if there were not a lack of diversity. In fact the federal court plainly did not so rule. No court has taken testimony on that issue and yet in Part III the majority now rules without the benefit of any evidence that this claim involves a "minor dispute."

Second, the majority, in the concluding paragraph of Part I, inserts the spectre that Travelers, if required to defend, would be required to assert defenses to matters which were beyond its knowledge or expertise. The fact is, as demonstrated in the Appendix, the insurance policy incorporates almost verbatim the defenses contained in the Collective Bargaining Agreement.

The majority reaches its result via a demonstrably faulty reasoning process:

*Premise:* The insurance policy was procured to fulfill a contract duty of the employer-railroads.

*Conclusion:* From that premise the majority jumps to the conclusion that the insurance contract cannot be said to be for the benefit of the employees.

The fallacy in that reasoning process is evident. It is not the law of third-party beneficiary contracts that a contract between A and B for the mutual benefit of A and B cannot also benefit C. Most contracts are intended to, and do, confer a benefit upon the contracting parties (A & B), but no respectable authority has gone so far as to suggest that such benefits are mutually exclusive to any benefit flowing to a third party (C).

The determination of whether there is a "third party beneficiary contract" or a "minor grievance" is not an appropriate matter for summary judgment ruling and the use of the summary judgment was a clear abuse of that procedure by the trial court. That abuse the majority now embraces and endorses, vastly compounding the mischief by statewide dissemination of incorrect third-party beneficiary contract law.

BISTLINE, J., concurs.

BISTLINE, Justice, dissenting.

If it be that a person whose life is insured for $100,000 (or whatever sum) can on his own death somehow contrive to collect from the insurer, the manner of doing so does not readily come to mind. Obviously, because the decedent, by definition, cannot be the beneficiary of a policy which promises payment upon his death, and is unable to enforce the policy, any action seeking to do so must be brought by his personal representative and/or by his ostensible beneficiary. Such is precisely what here took place.

It must be recognized that the Travelers policy here in question, particularly Article V, states that all benefits "shall be paid to the participating Employer." But, at the same time, it is also true that the employer is not the beneficiary of those benefits, but merely serves as a conduit whose obligation is to pass them on through to the actual beneficiaries of the employee who is injured, or, as in this case, has suffered "accidental death." It would be strange law indeed if the employer could reserve to itself the right to serve as that conduit without there existing the concomitant right in the ultimate beneficiary of the policy to pursue the policy benefits. It is significant, in addressing this issue, to note that the employer, in purchasing this insurance for the employees, chose a policy which contains the same exact exclusions from policy coverage as are set forth in the Collective Bargaining Agreement. The point is that the parties were in agreement that there would be certain special benefits payable to employees who were accidentally killed or injured while dead-heading under orders, *but* the employee would be excluded from those benefits, or those benefits diminished, if the accident occurred while the employee driving was under the influence of alcohol or drugs, apparently irrespective of the fact that the accident was not at all his fault. Now, if the employing railroad companies, in paying a premium, and in turn passing this solely contractual obligation on to Travelers [1] had not caused to be inserted therein the same exact defenses that were agreed upon in the Collective Bargaining Agreement—thereby passing along to Travelers the risk of an employee's death or injury and at the same time passing on the defenses as well, then there might be some merit to a contention that the employees were not direct beneficiaries of the policy provisions. Such, however, is not the case. What we have before us is no different than had the parties at the bargaining table agreed straight-forwardly that there would be such dead-heading benefits available to employees, and had the employer railroad agreed to purchase a policy, the purpose of which would be to provide those benefits. Such was not the agreement, but was for certain the

---

1. The majority opinion somehow confuses this contractual obligation with the "potential liability" that potential tortfeasors may subject themselves to and for which reasons they purchase "liability" policies which in essence are indemnity policies. Hence, it tangentially remarks that the group "policy covers the employer's liability for bodily injury, including death"—again demonstrating further confusion between the tort liability of a railroad to its servants and a contractual liability where no tort is in the least involved.

manner in which the employer unilaterally determined was the best way for it to economically assume the responsibility it had contracted. The majority sees it all as a "but-for" happenstance:

"Had it not been for the fortuitous circumstance that the employee Downing had transferred from Burlington Northern, his original employer, to its subsidiary, the Camas Prairie Railroad, there would have been no insurance involved, since apparently Burlington Northern had not joined the group policy, opting rather to self-insure its obligations under the collective bargaining agreement."

Whatever might have been the case *if* Mike Downing had been working for Burlington and accidentally killed on the bridge over the Pend Oreille River at Oldtown, Idaho, is just as irrelevant as what Dessie Blake's mother *might* have done if she had been correctly diagnosed—the facts being that Dessie's mother was not correctly diagnosed and Dessie was born with rubella-

caused defects (*Blake v. Cruz*, —— Idaho ——, 315 P.2d 698 (Sup.Ct. No. 14510, Sept. 18, 1984)). The confusion which I suggested in the footnote, *supra,* is exemplified in the sentence immediately following the majority's "but-for" analysis, where that opinion goes on to bootstrap itself by the majority's perceived notions of the intent of parties to a contract: "The policy in question was clearly *intended* to be an indemnification, or liability policy. It was *intended* to insure the Camas Prairie Railroad's obligations under the collective bargaining agreement." (Emphasis added.) Whether those perceptions of intent be right or wrong, the policy to my mind bears all of the attributes of the run-of-the-mill provisions of ordinary health and accident policies which also make flat-rate payments for accidental injury resulting in death, as here, or loss of hands, feet, and eyes.[2]

As to the fortuitousness of Mike Downing's transfer to the Camas Prairie Railroad, it may be surmised that this small

---

2. "A rather careless form of procedure has been followed in a number of instances by some insurance companies of designating the employer as the beneficiary and paying the proceeds of the policy over to it upon the death of the insured. All this actually does is to divest the insurer of the actual burden of ascertaining the true beneficiary and paying over of the funds. When such forms are adopted, it is clear that the intent is not to leave the ultimate payment in the coffers of the employer, but to make the employer a trustee for the payment to the real beneficiaries."

1 Appleman, *Insurance Law and Practice,* § 45, p. 66.

"Here, however, the policy as a whole, as we view it, expresses an intention that the benefits paid thereunder shall be paid for the use of the employee. If such payment is made to the employer, he receives it as agent or trustee for the employee."

*Mutual Benefit Health and Accident Assoc. of Omaha v. Bullard,* 270 Ala. 558, 120 So.2d 714, 722 (1960).

"The chief difference between a liability policy and an indemnity policy is that under the former a cause of action accrues when the liability attaches, while under the latter there is no cause of action until the liability has been discharged, as by payment of the judgment by the insured. That is, under an indemnity policy, *the insured must have suffered an actual money loss before the insurer is liable.*"

6B Appleman, *Insurance Law and Practice,* § 4261, p. 72 (emphasis added). *See White v.*

*Goodville Mutual Casualty Co.,* 226 Kan. 191, 596 P.2d 1229, 1232 (1979).

"Group life insurance, though contracted for by an employer, is not indemnity insurance but simply insurance upon a life of employees for their personal benefit and the protection of those dependent upon them for financial security."

*Simpson v. Phoenix Mutual Life Insurance Co.,* 24 N.Y.2d 262, 299 N.Y.S.2d 835, 247 N.E.2d 655 (N.Y.1969). *See Rivers v. State Capital Life Insurance Co.,* 245 N.C. 461, 96 S.E.2d 431, 68 A.L.R.2d 205 (1957).

"Even though E.N. Read [employer] is named as the policyowner, it is inescapable that this policy is for the benefit of his employees. The contract is called a 'Blanket Accident Policy' and contains the provisions usually found in a group policy. In the first paragraph, the defendant agrees to pay the benefits for losses resulting from accidental bodily injuries suffered by persons in the employ of the policy owner. The word 'indemnity' is not used in this policy, and there is no provision that benefits will be paid only after a judgment is obtained against E.N. Read. *There is nothing in the policy to indicate that E.N. Read must first be found liable to an injured employee before the benefits are payable.*"

*Key Life Insurance Co. of South Carolina v. Taylor,* 456 S.W.2d 707, 709 (Tex.1970) (emphasis added).

railroad, acting for economic reasons or compassion or both, did not believe it prudent or fair to its employees to operate self-insured, when for a premium it could subscribe to a group policy which would pay up to $1,000,000 for any one accident.

## APPENDIX TO DISSENT

This appeal presents the issue of whether, on the status of the record, summary judgment was properly entered in favor of Travelers Insurance Company and against Marilyn Downing on the maintenance of a direct action against the insurance company for death benefits under a group policy under a theory of the insurance policy being a contract for the benefit of a third party, or whether the record demonstrates that there exist material questions of fact for resolution by trial on the merits.

A second (and perhaps threshold) issue is whether the Idaho district court lacks jurisdiction in any event, due to the matter constituting a "minor dispute" under a railroad collective bargaining agreement, thereby vesting exclusive jurisdiction in the National Railroad Adjustment Board.

## I

### THE FACTUAL BACKGROUND

A detailed statement of the factual and procedural background is necessary to an understanding and resolution of the issues on this appeal. Michael A. Downing was an employee of Burlington Northern, Inc., in Spokane, Washington, when he transferred to Lewiston, Idaho to work on the Orofino-Kamiah line of Camas Prairie Railroad, a subsidiary of Burlington Northern. Downing, who was a train engineer, would drive the train from Orofino to Lewiston and back to Orofino, where he would leave it and then "deadhead" back to Lewiston in his own vehicle. Under the collective bargaining agreement Downing was paid twelve cents per mile and one hour's time for "deadheading" back to Lewiston. On the day in question, after the train "tied up" at Orofino at 4:55 p.m., Downing drove a motorcycle, which he had left in Orofino,

back toward Lewiston, where he lived. About ten miles out of Lewiston the motorcycle ran out of gas. Downing hitchhiked into town where he called his wife to come and get him and to take gas out to the motorcycle. Downing was at a bar or tavern near the service station from which he had called his wife. It is alleged that he had been drinking during this time. His wife asked him if he had anything to drink, to which he replied that he had two beers; however, Mrs. Downing stated in her deposition that she did not believe this to be true. She drove him, with some gasoline back to where he had left his motorcycle and then followed him as he rode it back into Lewiston. As they were crossing the Memorial Bridge, Downing evidently struck the divider, which caused him to lose control and be thrown into the oncoming traffic lane, where he was hit by another car and killed. The accident occurred four and one-half hours after Downing had left work at Orofino. The drive from Orofino to Lewiston is a distance of 45 miles.

The union to which Downing belonged (United Transportation Union) had entered into a collective bargaining agreement with many of the nation's railroads, including Burlington Northern and Camas Prairie. The collective bargaining agreement contained a provision for accidental death benefits for employees who were killed while riding in authorized "off-track" vehicles while traveling to and from work. A payment of $90,000 ($100,000 minus $10,000 offset for automatic life insurance benefit already paid) was authorized under the collective bargaining agreement where the employee was within the covered conditions and was not within any of the named exclusions.

Mrs. Downing made a claim to Burlington Northern under Article IV of the "off-track" agreement. Burlington denied the claim, stating that it did not come under the agreement's conditions because he was traveling on a motorcycle, his authorized off-track vehicle being an automobile; and on the further ground he had already completed his travel to Lewiston and was re-

turning to pick up his motorcycle. Finally, Burlington denied the claim because Downing may have come within the exclusion for driving while under the influence of alcohol. Burlington informed Mrs. Downing and her attorney that their remedy, if they wished to contest the denial, was under the Railway Labor Act since their claim involved construction of a collective bargaining agreement dealing with working conditions.

Mrs. Downing chose instead to make a demand for payment directly against Travelers Insurance Company. The direct demand upon Travelers was made on the theory that Mrs. Downing was a third party beneficiary of Travelers Insurance Company group accident and health policy No. GA–822432 between Travelers Insurance Company as "insurer" and a group of railroads, including Camas Prairie, as "employers", the employers collectively constituting the "policy holder".

The group insurance policy was procured pursuant to the terms of article IV of the collective bargaining agreement, the material provisions of which are set forth below.[1]

The group insurance policy provided the following definition of the term "employee":

The term "Employee" as used herein means an individual who is employed by a participating Employer named in Exhibit C in a capacity covered by a schedule agreement held by a labor organization with respect to which such Employer participates, as shown on the records of the Policyholder, to provide benefits of the kind provided by this policy. Benefits under this policy will be payable only with respect to those individuals who meet this definition at the time of the accident causing the injury involved.

The policy defined the term "bodily injury" in terms of the specific "deadheading" provisions of the Collective Bargaining Agreement as follows:

The term "bodily injury" as used herein means bodily injury, including death, caused by an accident and resulting directly and independently of all other

---

1. The collective bargaining agreement provided:
*ARTICLE IV—PAYMENTS TO EMPLOYEES INJURED UNDER CERTAIN CIRCUMSTANCES*
Where employees sustain personal injuries or death under the conditions set forth in paragraph (a) below, the carrier will provide and pay such employees, or their personal representative, the applicable amounts set forth in paragraph (b) below, subject to the provisions of other paragraphs in this Article.
(a) *Covered Conditions:*
This Article is intended to cover accidents involving employees covered by this Agreement while such employees are riding in, boarding, or alighting from off-track vehicles authorized by the carrier and are
(1) deadheading under orders or
(2) being transported at carrier expense.
(b) *Payments to be Made:*
In the event that any one of the losses enumerated in subparagraphs (1), (2) and (3) below results from an injury sustained directly from an accident occurs or commences within the time limits set forth in subparagraphs (1), (2) and (3) below, the carrier will provide, subject to the terms and conditions herein contained, and less any amounts payable under Group Policy Contract GA–23000 of The Travelers Insurance Company or any other medical or insurance policy or plan paid for in its entirety by the carrier, the following benefits:
(1) *Accidental Death or Dismemberment*

The carrier will provide for loss of life or dismemberment occurring within 120 days after date of accident covered in paragraph (a):
Loss of Life        100,000
....
(d) *Exclusions:*
Benefits provided under paragraph (b) shall not be payable for or under any of the following conditions:
(1) Intentionally self-inflicted injuries, suicide or any attempt thereat, while sane or insane;
(2) Declared or undeclared war or any act thereof;
(3) Illness, disease, or any bacterial infection other than bacterial infection occurring in consequence of an accidental cut or wound;
(4) Accident occurring while the employee driver is under the influence of alcohol or drugs, or if any employee passenger who is under the influence of alcohol or drugs in any way contributes to the cause of the accident;
(5) While an employee is a driver or an occupant of any conveyance engaged in any race or speed test;
(6) While an employee is commuting to and/or from his residence or place of business.

causes in loss covered by this policy provided such injury is sustained by an Employee while he is operating, riding in, boarding, or alighting from an off-track land conveyance authorized by the participating Employer and *while such Employee is deadheading* under the orders of the participating Employer or is being transported at the expense of the participating Employer. (Emphasis supplied).

The insurance policy then, in article V, entitled "Limited Accident Benefit" provides verbatim for the same six exclusions which are set forth in article IV(d) of the collective bargaining agreement.

When Travelers would not honor the demand, appellant brought this action, naming as defendants Travelers, Burlington and Camas Prairie, and alleging entitlement to the benefits under the policy between Travelers and Burlington (Count I) and conspiracy on the part of all three defendants to defeat her claim under the policy (Count II).

One month after the complaint was filed, defendants Burlington Northern and Camas Prairie removed the case to federal district court. All three defendants then moved for summary judgment, and plaintiff Downing moved for an order remanding the case to the state district court on the ground that there was no jurisdiction in the federal district court. After hearing the matter, U.S. District Judge Ray McNichols stated:

> THE COURT: I must say that sometimes oral argument is not valuable and sometimes it is very valuable. At one time I am frank to say that I believed that this was a federal question. But I am persuaded now that this is not the situation. This Court does not have original jurisdiction. I assume that there is not the needed diversity.
>
> I therefore feel that I have no alternative but to remand the case to the State Court.

It appears from comments earlier in the proceedings that Judge McNichols based his ruling on his belief that the federal district court would not have jurisdiction even if there were a federal question involved:

> MR. DUNN: (Counsel for plaintiff Downing): ... I think, in summary, Your Honor, on the remand, I would say that either way the court holds that it did not have original jurisdiction.
>
> THE COURT: In other words what you are saying is that the State Court should decide whether this is a minor dispute and that it would go back to the Board for determination under a labor dispute.
>
> MR. DUNN: That's what I am saying, Your Honor. The State Court is the proper Court to determine that question.
>
> THE COURT: Well, the State Court would have to decide if this is a minor dispute.

Thus, the federal district court seemed to have been convinced that if the matter at issue was a "minor dispute" under the Railway Labor Act, 45 U.S.C. § 153, then the Railroad Adjustment Board would have exclusive jurisdiction, not the federal district court, and if it were not a "minor dispute," there still would be no jurisdiction in the federal district court because there was no diversity, and only the state courts would have jurisdiction. Accordingly, the removal order was vacated and the case remanded to the state district court where it was originally filed.

After remand to the state district court, the defendants moved for summary judgment.[2] The district court granted summary judgment in favor of all three defendants on both Counts I and II. As to Count II, the conspiracy claim, plaintiff had stipulated she had no evidence of a conspiracy. Plaintiff Downing has appealed only the summary judgment in favor of Travelers on Count I.

---

2. Camas Prairie and Burlington Northern, defendants below, moved for summary judgment, claiming that the state court "lacks subject matter jurisdiction because plaintiff has failed to exhaust her mandated remedies as prescribed by Congress under the Railway Labor Act." That summary judgment was granted by the trial court.

The Court, in dismissing Count I as against Travelers, did not articulate any legal basis for the ruling. Apparently it did so by ruling as a matter of law that this record does not establish that the Travelers Insurance Policy was a contract for the benefit of third parties such as Mrs. Downing. Whether that is the specific basis of the dismissal as to Travelers is not entirely certain in that the court minutes of the date of the oral argument, signed by the deputy clerk and signed and approved by the presiding judge state in part:

"The court finds Travelers Insurance Company is entitled to judgment as a matter of law because no controversial (sic) affidavits have been filed".

The latter ground would not have been a proper basis for the granting of summary judgment if in fact the affidavits supplied by the other parties together with the depositions and exhibits presented facts which if construed most favorably to the plaintiff would not have entitled Travelers to a judgment as a matter of law.

## II

### THE APPLICABILITY OF THE RAILWAY LABOR ACT

Both the defendant railroads and Travelers Insurance Company urged before the federal court that jurisdiction in this matter lies exclusively with the National Railroad Adjustment Board under the Railway Labor Act as a "minor dispute" and the claimant took the contrary position. The federal court did not resolve that issue, ruling that it did not have before it a federal question or original jurisdiction, and commenting that "the state would have to decide if this is a minor dispute".

However, following remand, the trial court did not resolve that issue, and the parties have not at this point presented evidence before either the trial court, or this court, upon which such a determination can be made. Rather, the issue has served no purpose other than to confuse the proceedings, and on remand the parties should squarely address the issue to provide the trial court with an opportunity for a proper ruling. As guidance, we would note that the focus should not be upon whether this is a "minor dispute" as distinguished from a "major dispute" under the Railway Labor Act, but rather whether it is a dispute under the Railway Labor Act at all.

Title 45, Section 153, U.S.C.A. provides for the establishment of the National Railroad Adjustment Board and defines its duties relative to the resolution of grievances as follows:

(i) The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements *concerning rates of pay, rules, or working conditions,* including cases pending and unadjusted on June 21, 1934, shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes. (Emphasis supplied).

The trial court should determine whether, as Travelers contends, this action involves a dispute over the interpretation or application of an agreement concerning rates of pay, rules or working conditions, or whether, as contended by Mrs. Downing, the issue is whether or not the insurance policy is a "contract for the benefit of a third party", with the terms and conditions of the insurance policy being the matter in contention.

Title 45, Section 154, U.S.C.A. establishes the National Mediation Board and Section 155 provides the jurisdiction in that Board to (a) mediate disputes concerning changes in rates of pay, rules or working conditions not adjusted by the parties in conference, and (b) any other dispute not referable to the National Railroad Adjustment Board or not adjusted in conference between the parties.

The distinction between a "major" dispute and "minor" dispute is summarized in *Independent Federation of Flight Attendants v. TWA, Inc.*, 655 F.2d 155 at 158 (1981):

> A "major" dispute is one arising out of the formation or change of a collective-bargaining agreement covering rates of pay, rules or working conditions. A "minor" dispute, on the other hand, is one "growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions. (Citations omitted).

The trial court having not ruled upon the applicability or nonapplicability of the Railway Labor Act to the claim of plaintiff, this Court will not do so on appeal, but will remand for initial determination thereof by the trial court.

We would note for the trial court's consideration two matters which are in the record. First, Mr. Eddie Joe Kinder, the director of Travelers Insurance Company's group department which is responsible for all of the group life, accident, and health insurance policies issued by Travelers testified in deposition that whether or not payment would be made by Travelers was apparently subject to the terms of the insurance policy rather than an interpretation

submitted for adjudication to the Railway Adjustment Board.[3]

Secondly, the trial court might wish to consider whether an authority submitted by defendants is on point, and if so, which way it cuts, that being *Neville v. Illinois Central Gulf Railroad Company*, 424 F.Supp. 1349 (D.C.Miss.1976).[4]

### III

### CONTRACTS FOR THE BENEFIT OF THIRD PERSONS

Should the court on remand determine that jurisdiction is not preempted by the Railway Labor Act, but rather that the controlling issue is the determination of whether or not the Travelers Insurance policy is a contract for the benefit of third parties such as Mrs. Downing, then, in that event, it will be necessary to resolve the latter issue. We hold that issue is, in the context of the present record, a question of fact which could not properly have been resolved on summary judgment. We reach that conclusion because of the following authorities and analysis which would be applicable, construing the facts in the present record, in a light most favorable to the claimant.

---

**3.** Q. No, I am not asking you to make a decision on a claim that's not been submitted. What I am asking you, Mr. Kinder, is if Camas were to pay Marilyn Downing the $90,000 she has claimed, would Travelers reimburse Camas? And I understand your answer to be that you would do so only if you decided that Camas was correct in making the payment to Mrs. Downing under the terms of the policy?

A. That's correct.

Q. And, otherwise, you would deny it?

A. That is correct, if it did not fall within the terms of the policy.

Q. So the decision to pay or not to pay on the part of Travelers, is reserved to Travelers, is that correct?

A. Yes.

**4.** The court in Neville stated:

The Railway Labor Act (45 U.S.C. Section 153, et seq.) requires that disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules or working conditions, be handled in their usual man-

ner, and, if not adjusted, be referred to the appropriate division of NRAB in the manner prescribed by the Act. The reason for this legislation mandated by the Congress is that such disputes should be processed and disposed of by an arbitration board expert in railroad jargon .... [T]he Court [finds] that the dispute involves not an interpretation of the policy, but an interpretation of the letter agreements, and is a matter involving fringe benefits afforded by the agreements, and, as such, is a dispute within the jurisdiction of NRAB. It may be that the appropriate division of NRAB has had before it the same kind of dispute. It goes without saying, whether it has or not, that any decision by the appropriate division would result in a ruling having union application as to other employees or nearest of kin, or representatives of the estates of deceased employees.

The Court accordingly grants the defendant's motion to dismiss for lack of subject matter jurisdiction.

Mrs. Downing claims that she is a beneficiary of the contract, although she is not specifically named in the insurance contract. On the other hand, Travelers Insurance Company asserts that the contract is a contract of indemnification, although the word "indemnification" or phrases having that import do not specifically appear therein.

In Williston on Contracts (Third Edition) § 369 the rule is stated:

In practically every jurisdiction, a beneficiary to whom the insurer has promised the insured that the insurance money shall be paid is given a right to enforce the policy, and generally by a direct action. This result has been reached in jurisdictions adhering to the strict doctrine of privity of contract by statute; but in most states without the aid of a statute.

Ordinarily, a beneficiary of such an insurance contract may maintain an action thereon, though not named therein, when it appears by fair and reasonable intendment that his rights and interests were in the contemplation of the parties, and were being provided for at the time of making the contract.

Williston, *supra,* at page 906 reads:

The beneficiary of a contract of group insurance has been given the same direct right to enforce the policy as in ordinary life insurance cases. The contract of group insurance being ordinarily between an insurance society and an employer for the benefit of his employees, there is a defeasible vested interest in both the insured employee and the latter's beneficiary, enforceable only on the fulfillment of all the conditions of the policy.

The rights of the beneficiary to enforce the contract are further defined in Williston, *supra,* at page 908:

A third party beneficiary in an ordinary contract is subject to the limitation of its terms as he has no greater rights under it than are provided in the contract itself.

However, upon the death of the insured, or upon the occurrence of any other contingency or condition which results in a claim becoming payable, a right vests in the beneficiary which the insurer cannot defeat unless fraud, collusion or some similar circumstance can be shown.

In *Bergkamp v. Carrico,* 101 Idaho 365, 613 P.2d 376 (1980) this court held:

Where the terms of a contract are ambiguous, its interpretation and meaning is a question of fact and extrinsic evidence may be considered in attempting to arrive at the true intent of the contracting parties.

In *Concrete Contractors v. E.B. Roberts Construction Co.,* 664 P.2d 722 (Colo.App. 1982) the court stated:

The key question is the intent of the parties to the actual contract to confer a benefit on a third party. That intent must appear from the contract itself or be shown by necessary implication. It is a question of fact to be determined by the terms of the contract taken as a whole, construed in the light of the circumstances under which it was made and the apparent purpose the parties were trying to accomplish.

Based upon the foregoing authorities, it is apparent that if the facts and documents in the record are construed in a light most favorable to Mrs. Downing, the party against whom summary judgment was sought, that there are substantial issues of fact raised which rendered the disposition of the case on summary judgment improper, and therefore the case must be remanded for trial on the merits.

Travelers has asserted that it is fearful that certain defenses which might be maintained by the railroads are not maintainable by Travelers, but as noted below, each of the exclusions set forth in the collective bargaining agreement are incorporated verbatim in the group insurance policy contract. Furthermore, the collective bargaining agreement would be admissible into evidence as one of the extrinsic circumstances to be utilized in interpreting the group insurance policy contract.

## IV

### SUMMARY

In conclusion, it should be noted that by this decision we decide only the narrow issue presented to this Court, that being whether or not the granting of summary judgment on the basis of this record was improper, which question we answer in the affirmative. We do not decide whether the facts establish exclusive jurisdiction in the National Railway Adjustment Board and do not determine whether there does in fact exist an insurance policy contract for the benefit of a third party. Reversed and remanded.

No costs or attorney fees awarded.