108 P.3d 340

Harry **HARTMAN** and Pamela Hartman, individuals, as assignees of Melissa Keane's rights set forth in Assignment November 9, 2001, Plaintiffs–Appellants,

v.

**UNITED HERITAGE PROPERTY AND CASUALTY COMPANY,** f/k/a Idaho Mutual Insurance Company, an Idaho corporation, Defendant–Respondent.

No. 30304.

Supreme Court of Idaho,
Boise, February 2005 Term.

Feb. 18, 2005.

Elsaesser, Jarzabek, Anderson, Marks, El-liott & McHugh, Sandpoint, for appellants. Joseph E. Jarzabek argued.

Elam & Burke, P.A., Boise, for respon-dent. Jeffrey A. Thomson argued.

EISMANN, Justice.

This is an appeal from a judgment dismiss-ing the claims asserted against an insurance company by judgment creditors of the in-sured. We affirm the judgment of the dis-trict court.

## I. FACTS AND PROCEDURAL HISTORY

The Plaintiffs–Appellants, Harry and Pamela Hartman, (the Hartmans) were the parents of Ty Hartman, who died on Novem-ber 8, 1998. During the evening of that day, Melissa Keane (Keane), two boys, and Ty, all of whom were minors at the time, were pres-ent at the home of one of the boys. Accord-ing to what Keane and the two boys later told law enforcement, they and Ty were us-ing illegal drugs, when they noticed that Ty was having trouble breathing. In an attempt to revive him, they poured water down his throat and performed cardio-pulmonary re-suscitation. When that proved unsuccessful, they put Ty in a car to take him to the hospital, but decided not to do so because his mother worked there. When they later real-ized that Ty was dead, they disposed of his body by burning it.

On December 9, 1998, the Hartmans brought an action to recover damages arising from the death of their son. They named as defendants Keane, her mother, the two boys, and the boys' parents. The Hartmans al-leged claims for battery, wrongful death, and intentional infliction of emotional distress.

At the time of Ty's death, Keane's mother had a homeowner's insurance policy issued by the Idaho Mutual Insurance Company, now the Defendant–Respondent, United Her-itage Property and Casualty Company (Unit-ed Heritage), under which Keane was an additional insured. The policy provided $300,000 in coverage for personal injury, but excluded coverage for intentional acts and for claims arising out of the use of illegal drugs. Keane's mother made a claim under the poli-cy, and United Heritage provided Keane and her mother with an attorney to defend the Hartmans' wrongful death action.

On February 22, 1999, United Heritage filed a declaratory judgment action against Keane and her mother seeking a determina-tion that there was no coverage under the policy for the claims alleged in the Hartmans' wrongful death action and that United Heri-tage had no duty to continue providing a defense in that action. United Heritage did not join the Hartmans in the declaratory judgment action, nor did it notify them of that lawsuit.

Keane and her mother retained an attor-ney to defend the declaratory judgment ac-tion, but that attorney withdrew about a month before the hearing on United Heri-tage's motion for summary judgment. Prior to the hearing, Keane and her mother reached a settlement with United Heritage, which was memorialized in a written release agreement. In exchange for United Heri-tage paying them $15,000 and agreeing to continue providing a defense in the wrongful death action for a period of twenty additional days, Keane and her mother released United

Heritage from any and all claims they may have against it, including any claims, liabilities, duties and obligations under the insurance policy. Pursuant to Idaho Code § 15–5–409a, the settlement of Keane's claim against United Heritage was approved on August 29, 2000, by the district judge presiding over the declaratory judgment action. That lawsuit was then dismissed with prejudice.

Some time later, Keane confessed to a judgment of $400,000 against herself in the Hartmans' wrongful death action. On November 19, 2001, she also assigned to them all claims she may have against United Heritage.

On January 31, 2003, the Hartmans filed this action against United Heritage. As the assignees of Keane, the Hartmans sought to recover for breach of contract and breach of the covenant of good faith and fair dealing. They also sought a determination that United Heritage was obligated to pay them under the policy either as judgment creditors of Keane or as third-party beneficiaries of the insurance contract.[1] United Heritage moved for summary judgment, and the district court granted the motion and dismissed this action. The Hartmans timely appealed.

## II. ISSUES ON APPEAL

A. Is the judgment entered in the declaratory judgment action brought by United Heritage against its insured, Melissa Keane, void for the failure to join the Hartmans as parties?

B. Do the Hartmans have a direct action against United Heritage?

C. Does Keane's release of all claims against United Heritage apply to Keane's later assignment to the Hartmans of claims for bad faith and breach of contract arising from circumstances surrounding the release itself?

D. Is United Heritage entitled to an award of attorney fees on appeal?

## III. ANALYSIS

In an appeal from an order of summary judgment, this Court's standard of re-

view is the same as the standard used by the trial court in ruling on a motion for summary judgment. *Infanger v. City of Salmon,* 137 Idaho 45, 44 P.3d 1100 (2002). All disputed facts are to be construed liberally in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party. *Id.* Summary judgment is appropriate if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Id.* If the evidence reveals no disputed issues of material fact, then only a question of law remains, over which this Court exercises free review. *Id.*

A. **Is the Judgment Entered in the Declaratory Judgment Action Brought by United Heritage Against its Insured, Melissa Keane, Void for the Failure to Join the Hartmans as Parties?**

The Hartmans contend that because they had a pending claim against Keane that may be covered under the terms of the insurance policy issued by United Heritage, they were necessary parties to the declaratory judgment action that United Heritage filed against Keane and her mother. According to the Hartmans, the judgment in the declaratory judgment action is void for the failure to join them as parties.

In *Temperance Insurance Exchange v. Carver,* 83 Idaho 487, 490, 365 P.2d 824, 826 (1961), this Court stated, "Injured third parties are proper, but not necessary, parties defendant in an action brought by an insurer for a declaratory judgment determining the validity of an insurance policy, and its liability thereunder." The Hartmans ask us to distinguish, disavow as dicta, or overrule that statement. We need not address that issue, however, because the judgment in the declaratory judgment action is not void even if the Hartmans were necessary parties.

---

1. The Hartmans abandoned their claim that they were third-party beneficiaries of the insurance contract.

We narrowly construe what constitutes a void judgment. *State, Dept. of Health and Welfare v. Housel*, 140 Idaho 96, 90 P.3d 321 (2004). As we stated in *McGrew v. McGrew*, 139 Idaho 551, 558, 82 P.3d 833, 840 (2003), a judgment can be held void for the following reasons:

In order for a judgment to be void, there must generally be some jurisdictional defect in the court's authority to enter the judgment, either because the court lacks personal jurisdiction or because it lacks jurisdiction over the subject matter of the suit. *Puphal v. Puphal*, 105 Idaho 302, 669 P.2d 191 (1983). A judgment is also void where it is entered in violation of due process because the party was not given notice and an opportunity to be heard. *Prather v. Loyd*, 86 Idaho 45, 382 P.2d 910 (1963) (judgment void where trial court entered judgment against makers of note without giving makers an opportunity to present evidence regarding their affirmative defense of lack of consideration). *See also, Wright v. Wright*, 130 Idaho 918, 950 P.2d 1257 (1998) (default judgment void where parties whose attorney had withdrawn did not serve upon them a copy of the order which contained notice that judgment by default could be entered if they did not appear in action within twenty-one days).

In the declaratory judgment action filed by United Heritage, the district court did not lack personal jurisdiction over the parties to that action, nor did it lack subject matter jurisdiction to determine the issues presented. The parties to that action were also given notice and an opportunity to be heard.

The fact that a party who is deemed necessary or indispensable is not joined in the lawsuit does not render the judgment void. As explained in *Koehler v. Dodwell*, 152 F.3d 304, 309 n. 7 (4th Cir.1998), in construing Federal Rule of Civil Procedure 19(b), which is identical to our Rule 19(a)(2):

We note that the issue of whether WPL was indispensable to the resolution of the misrepresentation claim is immaterial to the validity of the default judgment. Federal Rule of Civil Procedure 19(a) provides that persons who claim an interest relating to the matter litigated and persons whose presence in a suit is necessary to accord complete relief between those who are already parties shall be joined in the action if they are subject to service of process and their joinder in the litigation will not deprive the court of subject-matter jurisdiction. *See* Fed.R.Civ.P. 19(a). Rule 19(b) then explains that if such a person "cannot be made a party, the court shall determine whether *in equity and good conscience* the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." Fed.R.Civ.P. 19(b) (emphasis added). As the emphasized language of Rule 19(b) indicates, however, the requirement that a case shall not proceed absent joinder of all indispensable persons is not a jurisdictional prerequisite, but rather an equitable rule "both in its origin and nature." 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1611 (2d ed.1986). Indeed, the Advisory Committee Notes to the 1966 amendment of Rule 19 state that the rule was amended in part to make clear that "[e]ven if the court is mistaken in its decision to proceed in the absence of an interested person, it does not by that token deprive itself of the power to adjudicate as between the parties already before it through proper service of process." Fed.R.Civ.P. 19 advisory committee's note; *see United States v. O'Neil*, 709 F.2d 361, 371 (5th Cir.1983) (explaining that the issue of whether an indispensable person was not joined as a party is not jurisdictional and therefore a judgment is not void because of the failure to join the indispensable person).

Likewise, in *Tomchak v. Walker*, 108 Idaho 446, 700 P.2d 68 (1985), we addressed the issue of the failure to join indispensable parties in a declaratory judgment action. Idaho Code § 10–1211 provides, "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." In *Tomchak*, this Court held that under § 10–1211 the failure to join an indispensable par-

ty was an affirmative defense that must be raised in the declaratory judgment action. This Court stated, "It is true that all property owners of record to the road should be joined as indispensable parties. However, defendants must raise the issue as an affirmative defense, I.R.C.P. 12(b)(7), after which the burden falls on the plaintiffs to join all 'parties who have or claim any interest which would be affected by the declaration.' I.C. § 10–1211." 108 Idaho at 449, 700 P.2d at 71.

▮▮▮ Even if the judgment in the declaratory judgment action were held void, it would not benefit the Hartmans. The coverage dispute was resolved by an agreement memorialized in the written release agreement. The judgment entered in the declaratory judgment action did not incorporate any of the terms of the settlement. It merely dismissed the action with prejudice. Setting that judgment aside would not affect the validity of the release agreement. The district court's approval of the settlement under Idaho Code § 15–5–409a is independent of the judgment. A court's authority under that statute to approve the compromise of a minor's claim is not dependent upon a civil action being pending regarding that claim.

## B. Do the Hartmans Have a Direct Action Against United Heritage?

▮▮▮ When an insured assigns rights to recover under an insurance policy, the assignee is in the same position as the insured and takes only those rights and remedies the insured had. *J.R. Simplot Co. v. Western Heritage Ins. Co.*, 132 Idaho 582, 977 P.2d 196 (1999). The insurance company has the same defenses against the assigned claims as it would have if they were asserted by its insured. The release has not been set aside and the Hartmans did not assert grounds to do so. As Keane's assignees, the Hartmans are bound by its terms. The Hartmans contend, however, that as Keane's judgment creditors they have a right to recover directly from United Heritage that is independent of their assignment and that the release agreement, to which they were not parties, is not a defense to such direct action.

We have never held that an insured's judgment creditor has a direct action against the insurer. In support of their argument that we have implicitly approved such actions, the Hartmans cite language from *Downing v. Travelers Insurance Co.*, 107 Idaho 511, 514–15, 691 P.2d 375 378–79 (1984), wherein we stated, "Appellant should not be allowed to sue the insurance company directly any more than a tort victim injured in an automobile accident should be able to directly sue the insurance carrier of the tortfeasor *without having first proved a claim against the tortfeasor individually*." (Emphasis added.) According to the Hartmans, the emphasized language indicates that once the injured party has proved a claim against the tortfeasor individually, the injured party can then sue the tortfeasor's insurance carrier directly. The Hartmans read that portion of the *Downing* opinion too broadly, and overlook our clarification of it in *Graham v. State Farm Mutual Automobile Insurance Co.*, 138 Idaho 611, 67 P.3d 90 (2003).

In *Graham*, the plaintiff had obtained a judgment for $2,100 against the insured in small claims court, and the insurance company appealed. At the trial de novo on appeal, the plaintiff obtained a judgment against the insured for $2,602.50. He then filed an action against the insurance company alleging that by appealing the small claims judgment, it breached a duty of good faith and fair dealing owing to a judgment creditor of its insured. When arguing that we should recognize such cause of action, he relied upon the same portion of the *Downing* opinion as do the Hartmans here. We rejected the argument and explained that the plaintiff in *Graham* was reading too much into that portion of the *Downing* opinion.

In context, this statement does not establish Graham's position. The controversy in the *Downing* case was one of a "direct action of an employer against an insurer, by a party not a party to the insurance contract," and it did not concern a third-party with a judgment. The point on which the court disposed of the case was the fact that the plaintiff had attempted to bring an action "without first establishing entitlement to any death benefits under the collective bargaining agreement, appel-

lant is attempting to circumvent the requirement that she establish a right under the death benefit provision of the collective bargaining agreement." *Downing* was decided prior to *White v. Unigard [Mutual Insurance*, 112 Idaho 94, 730 P.2d 1014 (1986)] and cannot be read to establish the right of a third party to bring an action for the breach of good faith and fair dealing against the tortfeasor's insurance company. In Idaho there is no such right.

138 Idaho at 614, 67 P.3d at 93 (internal citations omitted).

Any rights against United Heritage that the Hartmans may acquire as judgment creditors of Keane cannot be greater than the rights that Keane would herself have against United Heritage. If the Hartmans executed upon Keane's claims against United Heritage, they could only obtain whatever claims she had on the day the execution was levied. I.C. § 11–309. Their status as judgment creditors of Keane does not make them additional insureds under the insurance contract. Even if we were to grant them the right to seek recovery directly from United Heritage, rather than by executing upon whatever claims Keane may have, their right to recover against United Heritage would be no greater than Keane's right to recover.

We have previously held, "A third party may not directly sue an insurance company in an attempt to obtain the coverage allegedly due the insurer's policyholder." *Stonewall Surplus Lines Ins. Co. v. Farmers Ins. Co. of Idaho,* 132 Idaho 318, 322, 971 P.2d 1142, 1146 (1998). While recognizing the no-direct-action rule, the Hartmans ask us to hold that the insurance company and its insured are prevented from resolving between themselves the issue of coverage under the policy, at least until the third party has litigated its claim against the insured. The basis of the no-direct-action rule is that the person allegedly injured by the insured is not a party to the insurance contract and has no rights under it. "Insurance policies are a matter of contract between the insurer and the insured." *Trinity Universal Ins. Co. v. Kirsling,* 139 Idaho 89, 92, 73 P.3d 102, 105 (2003). We decline to adopt a rule preventing the parties to that contract from resolving disputes that may arise between them regarding the terms of their contract.

An insurance company has separate duties to defend and to indemnify its insured. *Hoyle v. Utica Mutual Insurance Co.,* 137 Idaho 367, 48 P.3d 1256 (2002). In *Hoyle,* we held that whether an insurance company has a duty to defend or to indemnify can be decided in a declaratory judgment action prior to the resolution of the underlying lawsuit. The insured in *Hoyle* argued that any decision regarding the existence of those duties should await the termination of that lawsuit because as such litigation unfolded the complaint may be amended to assert a claim triggering the duties to defend or to indemnify. In rejecting that argument, we stated, "[I]t makes little sense to require an insurer to defend a lawsuit simply because a complaint, with no covered claims, could potentially be amended to include covered claims. If this were true, an insurer would be required to defend every lawsuit regardless of the allegations." 137 Idaho at 375, 48 P.3d at 1264. Likewise, the rule advocated by the Hartmans would require the insurance company to defend the underlying lawsuit in every case.

**C. Does Keane's Release of All Claims Against United Heritage Apply to Keane's Later Assignment to the Hartmans of Claims for Bad Faith and Breach of Contract Arising from Circumstances Surrounding the Release Itself?**

The Hartmans, as assignees of Keane, alleged in their complaint causes of action for breach of the insurance contract and bad faith arising out of the circumstances surrounding the negotiations leading up to, and the execution of, the release. The district court held that the written release signed by Keane and her mother was broad enough to cover any such claims. The release included the following provision:

In addition, by this Policy–Holder Release and Indemnity Agreement Releasors [Keane and her mother] release and discharge any and all claims, liabilities, duties and obligations that Releasors may have at law or equity, whether based on tort, con-

tract, or any other theory of recovery, including but not limited to any claims for bad faith, it being the express intent of the parties hereto that this Policy–Holder Release and Indemnity Agreement fully and finally resolve any and all disputes, actual or threatened, known or unknown, contingent or mature, between Releasors and Releasees [Mutual Heritage].

The terms of the release are broad enough to include the alleged claims of breach of contract and bad faith.

### D. Is United Heritage Entitled to an Award of Attorney Fees on Appeal?

▮ United Heritage requests attorney fees on appeal under Idaho Code § 12–121. Under that statute, attorney fees will be awarded to the prevailing party when this Court is left with the abiding belief that the appeal was brought or pursued frivolously, unreasonably or without foundation. *Courtney v. Big O Tires, Inc.*, 139 Idaho 821, 87 P.3d 930 (2003). In this case, the Hartmans made a good faith argument for the extension of existing law. We therefore decline to award attorney fees on appeal.

### IV. CONCLUSION

The judgment of the district court is affirmed. Costs on appeal, excluding attorney fees, are awarded to United Heritage.

Chief Justice SCHROEDER and Justices TROUT, BURDICK and JONES concur.

